## Hanover Fire Insurance Company et al.

### v.

## L. B. Connor, use, etc.

1. Garnishment—Debt uncertain.—A debt which is uncertain and contingent and may never become due and payable, is not subject to garnishment.

2. Garnishing insurance company.—An insurance company may be garnished on account of a loss accruing under a policy of insurance issued by it, for the liability to the insured clearly exists and the policy furnishes the standard by which the amount of the liability may be ascertained and fixed. This applies to unadjusted as well as adjusted claims.

3. Same.—A writ of garnishment was served upon a fire insurance company after a loss, but prior to the production by the assured of any proofs of loss. The garnishees, in their answers, admitted the execution to the assured of the two policies in question on the assured's stock of merchandise, the partial destruction by fire of the property insured during the term of the insurance, and that the amount of the loss was $1,000. It did not appear that the payment of the loss was in any way made conditional upon the production of proofs of loss. *Held*, that there was an indebtedness from the insurance company to the assured upon which the former are liable to be held as garnishees in this suit.

4. Same—Option to replace stock.—Where the language of the policy gave the insurance company an option " to repair, rebuild or replace the property with other of like quality " and the property in question was a stock of merchandise, and at the time of the service of the writ of garnishment the option had not been exercised by the insurance company, *held*, that as repairing and rebuilding would not apply to a stock of merchandise, the option reserved was to replace the stock; that the indebtedness can not be held to be uncertain and contingent, and therefore not subject to garnishment, merely because of an option on the part of the debtor to pay in merchandise rather than in money.

5. Rule under our statute.—Under our statute it is sufficient that the indebtedness be owing without uncertainty or contingency at the date of the answer. Even if it be contingent at the time of service of the writ, if the contingency be removed before answer, it is subject to garnishment.

6. Condition as to change of title—Chattel mortgage.—Policies of insurance contained the condition that if the property should be sold or transferred, or any change take place in title or possession ·thereof, whether by legal process, judicial decree, voluntary transfer or conveyance, the policies were to be void. After the execution of the policies the assured gave a chattel mortgage on the property. *Held*, that until the mortgage had matured, so as to vest the mortgagees with the legal title, the above condition was not broken.

7. PARTIES.—It was not necessary that the assignees, claiming the insurance money under the assignment disclosed in the answers, should have been made parties, as they obtained their interest *pendente lite.*

APPEAL from the Superior Court of Cook county; the Hon. ELLIOTT ANTHONY, Judge, presiding. Opinion filed November 8, 1886.

On the 20th day of December, 1884, Ithiel B. Farnum and George C. Farnum brought their suit in assumpsit in the superior court, by attachment, against Mrs. L. B. Connor, and caused the Hanover Fire Insurance Company, of New York, and the Citizens Fire Insurance Company, of New York, doing business under the name and style of the Underwriters Agency of New York, to be summoned as garnishees. Judgment was duly rendered in favor of the plaintiffs against Mrs. Connor for $546.85 and costs, and interrogatories to the garnishees were duly filed. On the 16th day of February, 1885, said garnishees filed their answers to said interrogatories, in which, after denying that at the date of the service of the writ they were indebted to Mrs. Connor in any sum, or had in their possession, custody or control, any lands, tenements, goods, chattels, moneys, rights, credits or effects belonging to her, or any rights, credits or effects of hers due and owing from them at the date of said service, or at any time since, or which might thereafter become due, and also denying that at the date of their answer they had any property, goods, chattels, rights, credits or effects of any kind, belonging to her or in which she was interested, stated, in answer to specific interrogatories, that Mrs. Connor had a policy of insurance in said companies upon a stock of goods at Charlevoix, Michigan; that they were informed that said stock of goods had been partially destroyed by fire, and so answered, but denied that they were liable or owed to her any sum of money under any policy of insurance; that they issued said policy to Mrs. Connor for a term of one year, from January 1, 1884, to January 1, 1885, for $1,000, said policy being numbered 900,002, the written portion of which policy being as follows: "Upon her stock of boots, shoes and leather, and such other merchandise

as is usually kept for sale in a boot and shoe store, while contained in the one-story frame, single-roof building, 15x30 feet, occupied by assured, situate on west side of Bridge street, between Mason and Clinton streets, Charlevoix, Michigan. For further particulars reference is had to survey No. 900,002, on file in this office, which is hereby made a warranty by the assured and a part hereof; $1,000 additional insurance concurrent herewith under policy 900,175, May 20, 1884;" that they issued another policy of insurance, similar to the foregoing, numbered 900,175, for $1,000, for a term of one year, from May 20, 1884; that after the partial destruction of said goods, Mrs. Connor, the assured, made a claim upon the garnishees for loss to the amount of $1,000, which claim has not been admitted or acknowledged by said garnishees; that since said partial destruction of said goods, and since said claim of .$1,000 had been made upon them, they had been duly notified that Mrs. Connor had duly assigned her interest in said claim for loss to the following persons and firms, being her creditors, to wit: to W. D. Robinson & Co., of Detroit, Michigan, $500; to C. M. Henderson & Co., of Chicago, Illinois, $250; and to various parties different sums amounting in the aggregate to $250; that since the service of the writ they have been served with a writ of garnishment in the suit of C. M. Henderson & Co. against said Connor, in a suit then pending in the Superior Court of Cook county, upon a claim for $336.14.

The plaintiffs thereupon, by leave of the court, filed additional interrogatories to the garnishees, and on the 30th day of March, 1885, said garnishees filed their answers thereto, in substance, that the loss suffered by Mrs. Connor upon the property covered by said policies had not been adjusted and determined between the garnishees and her; that the amount of damage to said property was agreed upon by the State agent of the garnishees for Michigan and Mrs. Connor at $1,000, but they deny that they are liable or owe to her, or to any other person, said sum of $1,000, or any other sum, under either of said policies; that they had not at any time consented to pay the loss, if any occurred, under said policies, to any other person than Mrs. Connor, and that neither said pol-

icies or either of them, or the loss occurring thereunder, had been assigned by Mrs. Connor by the consent of the garnishees at any time prior to the service on them of the writ of garnishment in this cause; that said garnishees received notice of the alleged assignment by Mrs. Connor to W. D. Robinson & Co. and others, by letter from Mrs. Connor, dated February 6, 1885; that they were served with the writ of garnishment in the case of Henderson et al. v. Connor, on the 21st day of January, 1885.

The plaintiffs afterward, by leave of the court, filed further interrogatories to the garnishees, to which answers were filed by them, June 10, 1885, stating, in substance, that the agreement mentioned in their former answers fixing the amount of the loss, was not in writing, and was only to the effect that the damage by fire to said goods amounted to $1,000, said agreement being made January 24, 1885, and not being indorsed upon either of said policies; that said loss occurred December 15, 1884; that proofs of loss under said policies were submitted to said companies January 24, 1885, and on that day the claims for damages arising from said fire were assigned to the parties, and in the manner set forth in their former answer; that by the terms of their said policies it was provided that it should be optional with the said companies to repair, rebuild or replace the property lost or damaged with other of like kind and quality, within a reasonable time, giving notice of their intention to do so within thirty days after the receipt of the proofs therein required; that the writ of garnishment in this cause was served upon them before said proofs of loss were submitted to said companies; that said assignment was made within thirty days from the time when the said proofs of loss were submitted to said companies; that at the time of the service of said writ of attachment, the said garnishees were not liable in law to be garnished or attached on account of any claim for loss or damage arising under said policies or either of them; that in and by said policies it was provided that if the interest of the assured in the property be any other than the entire, unconditional and sole ownership of the property, for the sole use and benefit of the assured, or be incum-

bered by any lien, whether by deed of trust, mortgage or otherwise, or if the building insured stands on leased ground, it must be so represented to the companies and so expressed in the written part of this policy, otherwise the policy shall be void; and that it was further provided in said policies, that if the property insured should be sold or transferred, or any change take place in title or possession, whether by legal process, judicial decree or voluntary transfer or conveyance, then said policies should be void; that by a certain chattel mortgage dated July 24, 1884, and filed in the office of the township clerk of Charlevoix township, in the county of Charlevoix and State of Michigan, said Mrs. Connor conveyed to W. D. Robinson & Co., of Detroit, Michigan, the goods and chattels insured by said policies; that said mortgage was made and delivered without the knowledge or consent of said garnishees, whereby said policies and each of them became void, and that there was due on said mortgage, at the time of said fire, the sum of about $900.

No issues were taken upon said answers, but the cause coming on to be heard, as to the garnishees, on the interrogatories to them, and their answers thereto, the court found that it appeared from said answers that said garnishees were indebted to Mrs. Connor in the sum of $1,000, and judgment was thereupon entered in her favor, and against said garnishees for that sum; of which judgment a sum equal to the amount of the judgment in favor of the attachment creditors against Mrs. Connor, and interest and costs, was adjudged to be for the use of said attachment creditors. The garnishees have appealed to this court.

Mr. DANIEL L. SHOREY, for appellants; that where judgment is demanded upon the answers alone it must clearly appear from the answers that the garnishee is chargeable, cited C. & St. L. R. R. Co. v. Killenberg, 92 Ill. 142; Rippen v. Schoen, 92 Ill. 229; Laschear v. White, 88 Ill. 43; C. & St. L. R. R. Co. v. Hindman, 85 Ill. 521.

The claim on the 20th day of December, 1884, could not be garnished: Bishop v. Young, 17 Wis. 46; Lovejoy v. Hartford Fire Ins. Co., 11 Fed. Rep. 63; Gies v. Bechtner, 12

Minn. 279; McKean v. Turner, 45 N. H. 203; Bucklin v. Powell, 60 N. H. 119; Thorp v. Preston, 42 Mich. 511; Godfrey v. Macomber, 128 Mass. 188; Martz v. Detroit F. & M. Ins. Co., 28 Mich. 201; Williams v. A. & K. R. R. Co., 36 Maine, 201; Frothingham v. Haley, 3 Mass. 68; Richardson v. Lester, 83 Ill. 55; Drake on Attachment, § 551; Waples on Attachment, 197, 366; Wade on Attachment, § 449.

Messrs. WEIGLEY, BULKLEY & GRAY, for appellee; that to bring a case within the provision as to sale or transfer so as to work a forfeiture, an absolute transfer must be made, cited Simpson v. Satterlee, 64 N. Y. 657; Johnson v. Hart, 3 Johns. Cas. 322; Conover v. Ins. Co., 1 N. Y. 290; Bard v. Poole, 12 N. Y. 495; Whitney v. McKinney, 7 Johns. Ch. 144; Field v. Mayor, 6 N. Y. 179; Hitchcock v. N. W. Ins. Co., 26 N. Y. 68; Jackson v. Silvernail, 15 Johns. 277; Lazarus v. Com. Ins. Co., 5 Pick. 80.

A mortgage is not included in the cases of such provision as it merely gives a lien of security: Conover v. Ins. Co., 1 N. Y. 290.

There was not any contingency existing at the date of the service of the writ herein that rendered it uncertain whether anything would ever become due from the garnishees. The contingency must be one that affects the debt itself, and not the parties, time, or manner of payment: Drake on Attachment, § 552; Thorndike v. DeWolf, 6 Pick. 119; Downer v. Curtis, 25 Vt. 630; Dwinel v. Stone, 30 Me. 384.

A claim against an insurance company under a policy of insurance for a loss that has occurred is a "credit" or an "effect" of the debtor: Loudeman v. Wilson, 2 H. & J. 379; Stadler v. Parmlee, 14 Ia. 175; Smith v. Cahoon, 37 Me. 281; Ware v. Gowen, 65 Me. 534; Wilcus v. King, 87 Ill. 107.

Under our statute an indebtedness due or to become due at the time of filing the answer is included: Young v. First Nat. Bk., 51 Ill. 73.

BAILEY, J. A judgment having been given against the garnishees on their answers alone, two questions are pre-

sented : 1, whether the garnishees have charged themselves by their answers ; and 2, whether the facts set up by them in defense of their liability upon their policies of insurance are sufficient to discharge them. The principal controversy in the case arises upon the first of these questions, and we have given it as careful consideration as the time at our command has permitted.

The answers admit the execution by the garnishees to Mrs. Connor of two policies of insurance against fire for $1,000 each, on her stock of merchandise; the partial destruction by fire of the property insured during the term of the insurance, and that the amount of the loss was $1,000. The writ of garnishment was served after the loss but prior to the production by the assured of her proofs of loss, and also prior to the intervening of any right or claim of any third party to the insurance money. Was there, then, an indebtedness from the insurance companies to the assured upon which the former are liable to be held as garnishees in this suit?

It is laid down as a general rule by the text writers on the subject of garnishment, that a debt which is uncertain and contingent, and may never become due and payable, is not subject to garnishment. In Drake on Attachment, § 551, the rule is laid down as follows: "The debt from the garnishee to the defendant, in respect to which it is sought to charge the former, must be absolutely payable, at present or in future, and not dependent upon any contingency. If the contract between the parties be of such a nature that it is uncertain and contingent whether anything will ever be due in virtue of it, it will not give rise to such a credit as may be attached ; for that can not properly be called a debt which is not certainly, and at all events, payable, either at the present or some future period." See also Wade on Attachment, § 449 ; Waples on Attachment and Garnishment, 197, 336. Many decisions of the courts of the various States may be cited in support of the same rule, and it must be accepted as the law, except so far as it may be modified by the peculiar provisions of our statute, a question which we will consider hereafter.

It is insisted by counsel for the garnishees that the claim of the assured under said policies was uncertain and contingent, at the date of the service of the writ, and therefore, under the rule above stated, not subject to garnishment. This uncertainty and contingency arose, as is claimed, 1, from the fact that no proofs of loss had then been served, and that the amount of the loss had not then been adjusted between the parties; and 2, from the fact that the insurance companies had, by the terms of the policies, an option to replace the property destroyed with other of like kind and quality, and were given thirty days after the production of proofs of loss to make and give notice of such election.

Considering these two propositions in their order, it seems very clear, in the first place, that upon the case made by the answers of the garnishees, there was no contingency or uncertainty, within the meaning of said rule, growing out of the fact that no proofs of loss had been produced. The policies themselves are not set out in the answers, nor are we apprised of the nature or terms of any of the conditions requiring the production by the assured of proofs of loss. It does not appear that the payment of the loss was in any way made conditional upon the production of proofs, nor is it shown, except by inference, that the duty of furnishing proofs was imposed upon the assured in any form. The only reference to the provisions of the policies on that subject is in the recital of the condition giving the insurers thirty days "after the receipt of the proofs therein required," to give notice of their election to replace the property destroyed. In the absence of express stipulation, there is no rule of law requiring the assured to furnish proofs of loss, or making the production of such proofs a condition precedent to the payment of the loss; and while we may know as a matter of general information, and from our professional experience, that policies of insurance against fire ordinarily contain provisions of that character, we can not say as a matter of law, or presume as a matter of fact, that these policies contained them, or that the liability of the insurance companies was in any way conditional upon the production of proofs.

A contract of insurance against fire is a contract of indemnity against loss by that casualty, and in the absence of any express stipulation to the contrary, the liability of the insurer becomes fixed and absolute upon the happening of the loss. Undoubtedly, where the policy requires something to be done after the loss, and makes the performance of that act a condition precedent to payment, the liability is contingent until the performance of the condition. The answers in this case admit the contract of indemnity and the loss, but set up, at least so far as proofs of loss are concerned, no condition precedent to payment of the loss, other than the happening of the loss itself.

The case of Lovejoy v. Hartford Fire Ins. Co., 11 Fed. Rep. 63, to which reference is made, does not seem to be in conflict with what we have said. In that case the policy itself was before the court, and is shown to have contained the usual provision requiring the assured as soon after the loss as possible, to render a particular account of the loss, etc., and it was held that such provision constituted a condition precedent to the payment of the loss.

It is urged, in connection with the foregoing proposition, that because, at the time of the service of the writ, no adjustment of the loss had been made and its amount ascertained and liquidated, the claim was not subject to garnishment. This is upon the theory that until the adjustment of the loss, the claim of the insured was merely a claim for unliquidated damages, and that such claim can not be reached by process of garnishment. While there are some decisions sustaining this view, as, for example, McKean v. Turner, 45 N. H. 203, and Gies v. Bechtner, 12 Minn. 279, the current of authority is the other way. The rule is stated by Mr. Drake as follows: "Where, under a contract of indemnity, a loss has occurred, and the party indemnified has a claim for such loss against him who engaged to indemnify him, the latter may be charged as garnishee in respect of such loss, if the contract furnish a standard by which the amount of the liability may be ascertained and fixed. Thus, an insurance company may be so charged on account of a loss accruing

under a policy of insurance issued by it; for the liability to the insured clearly exists, and the policy furnishes the required standard. This has been held, not only as to adjusted claims for loss, but also to such claims unadjusted." Drake on Attachment, § 549. It is so held in relation to unadjusted claims for losses under insurance policies, in Knox v. Protection Ins. Co., 9 Conn. 430; Northwestern Ins. Co. v. Atkins, 3 Bush. 328 ; Girard Fire Ins. Co. v. Field, 45 Penn. St. 129.

Was the indebtedness garnished rendered uncertain and contingent by the option to replace the property lost or damaged, reserved to the insurance companies by the policies, and not exercised by them at the date of the service of the writ, so as to take it out of the statute in relation to garnishment? It should be observed that, while the language of the policies gives an option "to repair, rebuild or replace the property lost or damaged, with other of like kind and quality," the insurance was wholly upon a stock of merchandise kept by the assured in her store for sale, so that the words, "repair" and "rebuild," manifestly have no force or application to the case. The policy was undoubtedly prepared, as such instruments almost universally are, by filling up a printed blank, adapted by its phraseology to insurance on all varieties of property, and said policies being upon merchandise only, those words only can be considered operative which apply to that species of property. The option to repair and rebuild would manifestly apply only to buildings, so that the only option reserved by these policies was, to replace the merchandise lost or damaged with other of like kind and quality. The indebtedness garnished then seems to be an absolute liability on the part of the insurance companies to pay the assured her loss, with an option on their part to pay in money or merchandise. It was a debt for $1,000, absolutely payable, but capable of being discharged in either of these modes. We are unable to see how it can be held to be uncertain and contingent, and therefore not subject to garnishment, merely because of an option on the part of the debtor to pay in one mode rather than another.

We are referred by counsel for the garnishees to two decisions which he claims sustain his position on this question. We have examined those cases carefully, and are of the opinion that they are distinguishable from this.    One·is Godfrey v. Macomber, 128 Mass. 188.    In that case the insurance was upon buildings, and·the policy gave the company the right to make good the damage, by repairing or replacing the buildings destroyed, and it was held that the company had no money or property in its hands due or belonging to the principal defendant absolutely and without contingency, since it had the right to rebuild instead of paying the money, and therefore that the trustee was properly discharged.    There the alternative of payment was a right to erect a building on the land of the assured, and an election to rebuild would substitute for the policy a mere building contract.    All that a judgment in garnishment could do, especially before a breach of such contract, would be to enforce its performance according to its terms, and performance would be the placing of permanent improvements and additions upon real property in the possession of the assured, and thus place the asset sought to be reached beyond the reach of the writ.

The other case is Martz v. Detroit Fire and Marine Ins. Co., 28 Mich. 201.    There the policy, which was upon goods and fixtures, gave the insurer the right to elect whether to replace the articles lost or damaged, or to take the goods at their appraised value, or rebuild or repair the building, etc., and it was held that the liability was not subject to garnishment.    The decision turned, however, upon the negative provisions of a statute of Michigan which enacted that " no one shall be adjudged a garnishee by reason of any money or other thing due from him to the principal defendant, unless it be at the time of the service of the writ of garnishment due or to become due absolutely *and without depending on any contingency.* "    It was held that as the liability might be discharged in one of two ways, at the option of the debtor, viz., by payment in goods or by payment in money, a contingency existed within the meaning of the statute.    We are of the opinion that said statute, as thus interpreted, goes beyond the

purview of the general rule above stated, and requires not only that the debt garnished should be payable without any uncertainty or contingency, but also that the mode of payment should be subject to no contingency.

In Smith v. Cahoon, 37 Maine, 281, it was held that one who had received personal property from the principal defendant, giving therefor his obligation to pay a stipulated price or return the property within a prescribed period, was chargeable as trustee, although when the writ was served, the time allowed him for making the election had not expired, and though in fact the election had not then been made. In Stradler v. Parmelee, 14 Iowa, 165, where the garnishee was indebted to the principal defendant in the sum of $500, payable in goods from his store, the garnishee was held, and a conditional judgment entered for the amount, to be discharged in goods and merchandise at a fair value, to be placed at the disposal of the sheriff, and in default of which the judgment should, on motion, be made absolute. In Londerman v. Wilson, 2 Harr. & John. 379, it was held that a debt due and owing, but which by agreement was to be paid in labor, was subject to attachment. In Ware v. Gowan, 65 Me. 534, a contract provided for payment upon estimates of the engineers, and process was served before any estimates were submitted, and it was held not to be such a contingency as would discharge the trustee.

The proceeding by garnishment is strictly a statutory proceeding, and to determine the precise limitations within which the writ may be used in this State, recourse must be had to our own statute. The fifth section of the act in relation to garnishment, provides that the creditor shall " exhibit and file all and singular such allegations and interrogatories, in writing, upon which he shall be desirous to obtain and compel the answer of any and every garnishee, touching the lands, tenements, goods, chattels, moneys, choses in action, credits and effects of such defendant, and the value thereof, in his possession, custody or charge, or from him due and owing, to the said defendant at the time of the service of said writ, *or at any time after,* or which shall thereafter become

due ; " and the garnishee is then required to make "full, direct and true answers to all and singular the allegations and interrogatories by the plaintiff so exhibited and filed." It is manifest that under this statute, the creditor is not confined to debts due, or even to debts owing at the date of the service of the writ. The statute seems to embrace all of the following cases : 1, where the debt is owing and due at the date of service ; 2, where it is owing at the date of service and becomes due thereafter ; and 3, where it is owing and due at any time after the service of the writ, up to the date of the answer. It is accordingly held in Young v. First National Bank, 51 Ill. 73, that the garnishee is required to answer and make full discovery in reference to any indebtedness to the debtor up to the time of making his answer, and is not limited in that respect to the date of the service of the writ. The court, in considering the statute above cited, says :  " This section, so far from limiting the answer to the time of the service of the writ, extends it to future indebtedness and subsequent possession of goods, chattels, money, property and effects. Under this enactment, no one would seriously contend that the garnishee would not be compelled to make a full discovery up to the time of making his answer. The statute declares he shall, and in language too plain to be mistaken." See also, Wilcus v. King, 87 Ill. 107. The case of Bliss v. Smith, 78 Ill. 359, and other cases following that decision, do not affect this question, as that case turned upon a construction of the statute exempting from garnishment a certain amount of the wages of a defendant, being the head of a family and residing with the same, and made no attempt to construe the section of the statute in relation to garnishment above cited.

The rule, then, that an indebtedness, to be subject to garnishment, must be owing absolutely and subject to no contingency, must be applied, in this State, in such way as to be consistent with the provisions of our statute. It is sufficient that the indebtedness be owing without uncertainty or contingency at the date of the answer. Even if it be contingent at the time of service, if the contingency be removed before an-

swer, it is subject to garnishment under our statute. However, then, we may view the liability of the insurance companies in this case at the date of the service of the writ, it can not be questioned that the insurance money was absolutely owing, and was due át the time the answers of the garnishees were completed. Then more than thirty days had elapsed after the production of proofs of loss and the adjustment of the loss. It is not pretended that the insurance companies elected to replace the property lost or damaged, and the time within which they were at liberty to make the election had then elapsed. The liability was then absolute to pay the loss in money, and it was in no way obnoxious to the rule excluding debts which are uncertain and contingent, from the operation of the process of garnishment.

We do not think, and it does not seem to be seriously claimed, that the answers disclose any substantial defense to the liability of the insurance companies on their policies. Two conditions of the policies are set out, but no facts are stated which seem to amount to a breach of either condition. The first of these conditions provided that the policies should be void if the interest of the assured in the property was not the entire, unconditional and sole ownership for her sole use and benefit, or if it was incumbered by deed of trust, mortgage or otherwise, and such defects of title were not represented to the companies and inserted in the policies. This condition manifestly related to the state of the title of the insured to the property covered by the policies at their date, and there is no pre'ense that her ownership of the property insured was not then the entire, unconditional and sole ownership for her sole use, or that it was then incumbered in any manner.

The other condition was undoubtedly prospective in its operation. It provided that if said property should be sold or transferred, or any change take place in title or possession thereof, whether by legal process, judicial decree, voluntary transfer or conveyance, the policies should be void. It is then alleged that after the execution of the policies, the assured gave a chattel mortgage on said property to W. D. Robinson & Co., and that at the date of the loss there was

Hanover Fire Ins. Co. v. Connor.

due on said mortgage the sum of about $900. Conditions of this character, by which it is sought to work a forfeiture of the policies, will be strictly construed, and will not be enforced unless the facts show a case clearly within their provisions. The execution of the chattel mortgage, at least until its maturity, was neither a sale nor transfer of the property, nor did it divest the insured of either the title or possession. It was a mere lien, the legal title and the possession remaining in the mortgagor. There is no sufficient averment that the mortgage had matured prior to the loss. The length of time it was to run before maturity is not stated, nor are any facts shown from which the date of its maturity can be inferred. It is true the answers allege that at the date of the loss there was due on the mortgage the sum of about $900, but the use of the word " due " in this connection is equivocal, as it may mean, and was probably intended to mean, simply that, at the time of the loss, the sum of about $900 was owing on the mortgage. If the mortgage had matured so as to vest the mortgagees with the legal title to the property, the garnishees should have so stated in clear and unequivocal language.

It is suggested that the assignees claiming the insurance money under the assignment disclosed in the answers, should have been made parties. They obtained their interest *pendente lite*, and we know of no rule which requires attachment creditors to bring before the court parties who have become purchasers of the property attached, or of some interest in it after the commencement of the attachment proceedings, and after the lien of the attachment creditors has attached. A rule requiring such creditors to bring in every subsequent assignee or purchaser, would tend to embarrass and protract the proceedings to an insufferable extent, and might defeat them altogether.

We find no error in the proceedings and judgment of the court below, and said judgment will therefore be affirmed.

Judgment affirmed.