Goodman v. Boyd.

| 44 | 249 |
| 85 | 267 |

H. W. GOODMAN FOR USE OF R. W. RATHBORNE, JR.,

v.

JAMES E. BOYD ET AL.

*Garnishment—Funds Held on Executory Contract—Board of Trade.*

1. Funds belonging to a judgment debtor held by another on an executory contract are not subject to garnishment.
2. A commission firm which holds funds from a customer to protect

itself as to trades made on the customer's account, has no right to close those trades without orders from the customer (unless to protect itself from loss), because it has been served with garnishee process by a judgment creditor of the customer, although the closing of the trades on the date of the service of process might result in leaving in its hands funds to the credit of the customer.

[Opinion filed April 9, 1892.]

APPEAL from the Superior Court of Cook County; the Hon. GEORGE H. KETTELLE, Judge, presiding.

Mr. F. M. CHARLTON, for appellants.

Mr. AUSTIN BIERBOWER, for appellees.

SHEPARD, J. It appears from the record that in April, 1889, the appellant, Rathborne, recovered a judgment at law against Goodman, and subsequently sued out garnishee process against James E. Boyd & Brother, Henry Murphy and Edwin J. Noble, who, it was claimed, were indebted to Goodman, or had effects or estate belonging to him in their hands. Samuel Boyd, one of the firm of James E. Boyd & Brother, and Henry Murphy, were duly served as garnishees on April 12th, the other garnishees not being found. The cause was submitted to the court for trial without a jury, and the court found the issues for the garnishees, the appellees in this court, and gave judgment for them. The only error here insisted upon is that the law applicable to the facts does not justify the finding of the issues for the garnishees by the court below.

The evidence discloses that Goodman, the judgment debtor, had been a customer of the firm of James E. Boyd & Brother, who were commission merchants doing business on the Board of Trade, for a considerable time prior to the middle or latter part of March, 1889, when a difficulty about some transaction arising between him and Samuel Boyd, the resident member of that firm, the latter refused in behalf of the firm to have any more dealings with Good-

Goodman v. Boyd.

man, and directed him to close up his account with the house.

At that time Edwin J. Noble was in the employ of Boyd & Brother to do their trading on the floor of the Board of Trade. Goodman was an acquaintance of Noble and went to him and told of the trouble that had occurred with Boyd. There were then existing what are called open trades between Goodman and Boyd & Brother. After hearing what Goodman had to say, Noble went to Samuel Boyd and said to him : " If you will allow Goodman to trade with you I will take care of his trades, and the fellow will have some trading. There is no use of throwing his business away." Boyd replied : " If you want to take charge of it and guarantee against his loss, all right. I won't be bothered with it. I won't have anything to do with him at all—with Goodman's trades. You can do so if you want to." And Noble in his testimony adds : " So I did so, and Goodman kept money in my hands to secure margins from time to time."

This occurred in the month of March, 1889, and on the 23d of that month the account of Goodman with Boyd & Brother was balanced by a check to Goodman for the amount to his credit, which check was apparently passed over by Goodman to Noble, and held by the latter as a margin for pending trades of Goodman. These trades were not closed out but passed exclusively to Noble's control, subject, of course, to the orders of Goodman so long as he should keep up his margins. After that time, Goodman gave orders for trades directly to Noble and not to Boyd & Brother, as before, and more or less trading appears to have occurred on his orders. The commissions on trades thereafter made for Goodman by Noble were received by Boyd & Brother, and the account of the trades was carried right along on the books of Boyd & Brother, with the understanding, however, between Boyd & Brother and Noble, that the latter would guarantee them on behalf of Goodman.

Although the evidence is not quite clear, it would seem that Goodman's margins in the hands of Noble up to April

12th, when the garnishee summons was served on Boyd and
Murphy, were ample to protect his trades, and that a bal-
ance of from twelve hundred to sixteen hundred dollars was
to his credit on the basis of closing out all his deals at the
market price of that or the next day. Such being the situ-
ation of affairs, Noble, on April 13th, after hearing that
Boyd & Brother had been garnisheed, met Goodman and
said to him, "There seems to be some suit or trouble and I
don't want to be bothered," and gave back to him in cash
and a check all excess held by him after evening up the
trades at the then market price. Noble held at that time,
according to his own testimony, somewhere between fifteen
hundred and two thousand dollars of Goodman's money,
about twelve or fifteen hundred dollars of which consisted
of a check made by Boyd & Brother, payable to Goodman
but not indorsed by him. Upon the figuring up of Good-
man's deals as they then stood as compared with the market
price of the day, there was some loss, the amount of which
does not appear, chargeable to Goodman, and out of the
moneys in Noble's hands for margins Noble deducted
such loss and gave back to Goodman the check of Boyd &
Brother, and in other checks and cash, whatever the balance
was that remained in his hands. From that time on the
average course of the market went largely against Goodman.
He responded to Noble as best he could for margins, so that,
as Noble testifies, he got back from Goodman for margins,
a considerable part of the money he had on April 13th
turned back to him, and on April 20th Noble closed out the
deals for lack of margins at a net loss to Goodman of
$2,487.50, being an excess of $287.50 over the money held at
that time by Noble as margins, which deficiency Noble
subsequently paid to Boyd & Brother.

The facts as recited are not contradicted, and although
there is other evidence in the record, they are abundant to
amply justify the finding of the court below in favor of the
defendant. Noble was never served as garnishee, and if
the moneys in his possession when the writ was served on
Boyd and Murphy on April 12th were not, in the eye of the

law, in the possession of Boyd & Brother, his employers, he could rightfully return to Goodman as much or as little of it as he might choose and not be liable to the appellant. But if, as is strenuously contended by appellant's counsel, the money in the hands of Noble on April 12th, the date of serving the garnishee writ on Boyd, was in contemplation of law in the custody of Boyd & Brother, yet it was not subject to garnishment, it being held by them on an executory contract upon which nothing might ever become due from them.

The funds in the hands of Noble, if legally in the custody and control of Boyd & Brother, were there as security, under either an expressed or implied contract with the owner of them, for the protection of the Boyds against the trades they had made on Goodman's account, which trades the Boyds had no right to close out without Goodman's consent or until it became necessary to close the deals in order to protect themselves from loss. There might never become anything due to Goodman after the closing of his trades. The liability of Boyd & Brother was uncertain and contingent. Hanover Fire Ins. Co. v. Connor, 20 Ill. App. 297, and cases cited; Webster v. Steele, 75 Ill. 544; Richardson v. Lester, 83 Ill. 55.

*Judgment affirmed.*