REID, MURDOCK & COMPANY, Respondents, v. F. MERCURIO et al., Defendants; THE THURINGIA INSURANCE COMPANY, Garnishee, Appellant.

**St. Louis Court of Appeals, January 21, 1902.**

1. Garnishee: PRACTICE, TRIAL. A garnishee summoned on execution can not contest the judgment in the principal case on the ground that the account filed by the plaintiff was insufficient.

2. ———: SERVICE OF GARNISHMENT, WHEN EFFECTIVE. Where notice of garnishment against an insurance company was delivered to the State Superintendent of Insurance, together with a summons notifying the company to appear as garnishee, and declaring that the officer attached in its hands all the goods, chattels and evidences of debt of the defendant, the service of garnishment is effective.

3. ———: ———: OFFICER MAY TESTIFY AS TO WHOM HE SERVED. An officer who had a writ of summons directed against a person by a certain name and two individuals are known in the community by that name, may point out in court, in giving testimony, the person he served; and such testimony does not contradict his return.

4. **Garnishment.** In a garnishment against an insurance company it must be shown that the defendant owned the goods covered by the policy of insurance to hold the company.

5. ———: PROOF OF LOSS, WHEN IT MAY BE SHOWN. Money due on an insurance policy may be garnished, but the company is entitled to show there were no proofs of loss served on it by the assured.

6. ———: ———. The plaintiff in the garnishment proceeding may show that the company waived proofs of loss.

Appeal from Audrain Circuit Court.—*Hon. Elliott M. Hughes,* Judge.

REVERSED AND REMANDED *(with directions).*

*R. D. Rodgers* for appellant.

(1) The account filed with the justice W. B. McIntire in the case of Reid, Murdock & Co. v. F. Mercurio, was not sufficient to give said justice jurisdiction, and the judgment rendered thereon was and is void. Swartz v. Nicholson, 65 Mo. 508; Brashears v. Strock et al., 46 Mo. 221; Pattison v. Lutz, 1 Mo. App. 133; Nutter v. Houston, 32 Mo. App. 451; Butts v. Phelps, 79 Mo. 302; Rosenburg v. Boyd, 14 Mo. App. 429. (2) This garnishment proceeding is based upon the judgment obtained before W. B. McIntire, justice of the peace, wherein Reid, Murdock & Company was plaintiff and F. Mercurio was defendant. That judgment was and is void as shown by authorities cited above. Hence, no garnishment proceeding can be founded thereon; it being the settled law of this State that a garnishment proceeding can not be based upon a void judgment. France v. Evens, 90 Mo. 74. (3) It would not an-

swer that the justice issued an execution to R. J. Muir, constable of Salt River township, Audrain county, and that said Muir, not finding any property in the county whereon to levy the same, issued a garnishee's summons to be served upon the defendant garnishee and sent the same to the sheriff of Cole county, Missouri, for service. Hansard v. Ins. Co., 62 Mo. App. 147. (4) There is no evidence in the record showing or even tending to show that the constable, R. J. Muir, issued a summons to garnishee, but that view is the most favorable for respondent that could be taken in this case, and even if that were true it would avail respondent nothing. Hansard v. Ins. Co., 62 Mo. App. 147. (5) If the return of the officer serving the garnishment does not show that the officer declared to the garnishee that he attached in his hands all debts due from him to the defendant, or so much thereof as shall be sufficient to satisfy the debt, etc., it confers no jurisdiction upon the court to make an order for payment which would bind the credits of the debtor in the hands of the garnishee. Dunn v. Railroad, 45 Mo. App. 29; Norvell v. Porter, 62 Mo. 309; Fee v. Kansas City, 58 Mo. App. 90.

*John D. Orear* for respondent.

(1) Garnishee was properly brought into court. R. S. 1899, sec. 3838. (2) The mere fact that the justice docket is silent as to the issuance of an execution to the sheriff of Cole county constitutes no error. The execution itself introduced in evidence is sufficient. State v. Hockaday, 98 Mo. 590; Rowe v. Scherz, 74 Mo. App. 607; Sutton v. Coe, 155 Mo. 206. (3) "A judgment which is not void on its face is not subject to collateral attack." Meyers v. McRay, 114 Mo. 377. (4) The question of identity is one peculiarly for the jury. Miller v. Marks, 20 Mo. App. 369; Rosecrans v. Railroad, 83 Mo. 678; State v. Sivils, 105 Mo. 530; Banking Co. v. Blell, 57 Mo. App. 410; Straus v. Kansas City, 86 Mo. 421.

GOODE, J.—During the latter part of the year 1899, and until February 22, 1900, a young man by the name of Mercurio conducted a fruit store in the city of Mexico, in Audrain county. The store was destroyed by fire on the night of the date mentioned. The business had been conducted in the name of F. Mercurio or Frank Mercurio, and as to whether the young man in charge of said store was Frank Mercurio and proprietor, or whether he was John Mercurio, and the business was owned by his father, who lived in St. Louis, and was merely managed by him as his father's agent, is disputed.

The Thuringia Insurance Company had insured the property for four hundred dollars, and after the fire occurred, its agent in Mexico agreed with the Mercurio in charge, whatever his name, on a settlement of the loss for three hundred and seventy-five dollars; but when it came to making out the proofs of loss, said Mercurio declined to sign or verify them, on the ground that the property belonged to his father, whose name was Frank Mercurio, while his was John Mercurio.

After the fire, respondents who constituted a firm which had sold merchandise to Frank Mercurio, brought suit before a justice of the peace on their unpaid account and recovered judgment for about seventy dollars. The suit was brought against F. Mercurio; but it seems the summons was issued to both Frank and John Mercurio, for the constable's return thereon is as follows:

"I hereby certify that I served the within writ by reading to and in the presence and hearing of the within Frank Mercurio and leaving copy of the summons with Frank Mercurio for both Frank and John Mercurio on the fifth day of March, 1900, in Salt River township, Audrain county, Missouri.
"R. J. MUIR, Constable."

The justice entered judgment by default against both the Mercurios. Afterwards an execution was issued to the sheriff

of Cole county by virtue of which he attached all debts due by said insurance company to John and Frank Mercurio, or so much thereof as should be necessary to satisfy plaintiff's judgment, and summoned it to appear as garnishee before the justice who had issued the writ, to answer such interrogatories as might be propounded by the plaintiffs. The statutory interrogatories were propounded, to which the garnishee filed an amended answer in the circuit court of Audrain county, whither the cause had gone by appeal from the justice of the peace. The interrogatories themselves are not preserved in the record, but the answer indicates that the inquiry was as to the indebtedness of the garnishee to Frank Mercurio alone. It denied having any goods, money, chattels or effects in its hands belonging to Frank Mercurio, or that it was indebted to him at the time it was served with garnishment, or at the time it answered.

Plaintiffs filed a denial, stating that on the sixth day of December, 1899, Frank Mercurio was a resident of Mexico, Audrain county, engaged in running a fruit and confectionery store there and on that day the garnishee issued a policy of insurance on his goods and merchandise for the sum of four hundred dollars; that the property was destroyed by fire on the twenty-second day of February, 1900, and thereafter the insurance company, through its agent, adjusted the loss with Frank Mercurio for three hundred and seventy-five dollars, whereby the garnishee became indebted to the said Frank Mercurio, *the defendant,* in said sum; that the insurance company was garnished while still indebted to said defendant and judgment was prayed against it for the amount of plaintiffs' judgment against said Frank Mercurio.

The insurance company replied, denying the defendant was at that time the owner of the goods and merchandise covered by said policy of insurance, and pleaded a clause in the policy making it void if the interest of the assured in the property was not truly stated therein, or if there was any fraud or

false swearing by him, and averring the policy was void because the defendant was not the owner of the goods and merchandise covered by it; further, that he had failed to give any notice to the company of a loss by fire and failed to make out proofs of loss although its agent had tendered to him blank forms of proofs as required. In connection with this allegation, the clause of the policy requiring proofs to be furnished to the company within sixty days after a fire occurred was pleaded.

On the trial of the issues between the plaintiffs and the garnishee, the former had judgment and the latter appealed.

I.    Appellant can not be heard to say the judgment of the justice of the peace in the original action is void on the ground that the account filed by the plaintiff was insufficient.    Jurisdiction was obtained over one of the Mercurios, as the return of the constable shows; and if the defendant who was served did not contest the sufficiency of the account or statement, certainly the judgment can not be attacked on account of its indefiniteness, in this collateral proceeding by a third party. Myers v. McRay, 114 Mo. 377.

II.    Neither is the position that there was no effective service of garnishment well taken.    The objection made by the appellant in this regard goes to whether the bill of exceptions shows plaintiffs made proof of the service of garnishment on the insurance company.    The bill shows the counsel for the plaintiffs offered in evidence the service on the company and the summons issued to the company when it was summoned as garnishee, to show it was duly summoned; that he was directed by the court to read, and did read, as evidence, the garnishment on the execution which was called for in the bill of exceptions by a direction to the clerk to copy it in making out the transcript, and this direction can not be fairly construed to have required less to be copied than the whole execution and the return thereon, showing the manner in which it was served. The case was brought here by abstracts of the record, and the appellant's additional abstract contains the execution and the

sheriff's return, which are both in due form and demonstrate that the writ was executed by delivering to the State Superintendent of Insurance, a summons to the Thuringia Insurance Company to appear as garnishee before the justice of the peace on the day in the summons named; and by attaching in the hands of the company all the goods, chattels, money and evidences of debt which it might have belonging to the defendants John and Frank Mercurio and all debts due and owing by it to said defendants or so much thereof as should be sufficient to satisfy the debt, interest and costs in the plaintiffs' case. The service of the garnishment was on the person and in the mode prescribed by the statute and this point is ruled against the appellant. Godman v. Gordon, 61 Mo. App. 685; Gates v. Tusten, 89 Mo. 13.

III. A vital question in the case was whether the young Mercurio who had been conducting the business in Mexico was Frank Mercurio, the owner of the goods and the person named in the insurance policy as the assured, or whether Frank Mercurio who owned the goods and the policy was the father of said Mercurio who lived in Mexico and himself resided in St. Louis. There was testimony tending to show the young man was called and called himself Frank Mercurio occasionally. One reason why this question of the identity of Frank Mercurio became important was to ascertain whether or not Frank Mercurio, the owner of the goods and policy, had ever been served with process in the original action so that a valid judgment could be rendered against him by the justice of the peace. It is manifest the return of the constable above mentioned shows a good service on the person to whom the constable read the writ and a bad one on the other party for whom a copy was left with the one actually served. R. S. 1899, sec. 3862. Appellant's contention of insufficient service because the word *it* was left out of the return after the words *by reading*, will be disregarded as frivolous, the omission being obviously a clerical mistake.

It is beyond peradventure and indeed is admitted in the respondents' brief, though it was controverted on the trial, that only the young Mercurio who resided in Mexico was served with process in the original action, and, of course, the judgment therein could be valid against no one but him, whether his Christian name is Frank or John.   If John Mercurio was the man and was served as Frank Mercurio, but failed to take advantage of the misnomer, though he was informed by the writ he was the person intended, the judgment against him was valid.    Skelton v. Sackett, 91 Mo. 377; Corrigan v. Schmidt, 126 Mo. 304.

The record shows the court refused to permit the constable to point out or identify the individual to whom he read the summons on the objection of respondents' counsel; though he now claims young Mercurio was designated by the officer in his testimony as the person served.   That ruling was erroneous.   Identifying the particular individual to whom the writ was read in no way tended to contradict or impeach the return of the officer and, in view of the proof as to the Christian names of the father and son, was necessary to show who was brought within the jurisdiction of the court and against whom judgment could be and was rendered.   Some of the testimony tended to show the Mercurio in Mexico, as well as the one in St. Louis was sometimes called Frank.   If no proof is admissible *aliunde* the return to make certain the person on whom process was had, then a return of service on John Smith and judgment accordingly would be valid against any John Smith on earth, would support a garnishment proceeding against the debtor of any John Smith and would preclude the garnishee from proving the man he owed was not the execution defendant.   But the rule as to the effect of an officer's return is that its statements of material facts are conclusive proof of the truth of the recitals against parties to the litigation and those in privity with them; but only prima facie as to all others whose interests may be thereby affected.   This was the ruling

in a cause where it was sought to conclude interpleaders by a sheriff's return on a writ of attachment. Burghert v. Bourchert, 59 Mo. 80. The officer's certificate concerning the service of the writ binds absolutely only those who are associated with the conduct of the cause in which the writ was issued, or so interested in its result, that they are entitled to have the return set aside or amended, or to sue the officer for having made a false return. 3 Freeman on Executions (3 Ed.), sec. 365; Witherell v. Goss, 26 Vt. 748; Phillips v. Elwell, 14 Ohio St. 240; Brown v. Davis, 9 N. H. 76; Claggett v. Richards, 45 N. H. 360. Evidence should have been received as to the identity of the party to whom the summons was read or delivered, since the plaintiffs did not concede below as they do here, that it was the young man.

IV. After determining who was the party against whom the judgment was valid in the original action, by ascertaining the one on whom an effective service was had in the manner above indicated, the next question for solution was whether or not he was the owner of the goods consumed by the fire and of the policy of insurance thereon? We are unable to approve the instructions given by the court at the instance of the plaintiffs, in so far as they bore on this issue; because they either directed a recovery on a bare finding that the judgment debtor transacted business as Frank Mercurio, or made the garnishee responsible to the plaintiffs if he (said judgment debtor) had acted so as to induce a belief that he owned the insurance property. That theory left out of view the rights of the elder Mercurio as the possible owner of the merchandise and the policy and the liability of the insurance company to him in that contingency; for the acts of his son could not bind him unless he participated in them and plaintiffs had been placed in such a situation thereby that it would be unjust to permit the father to claim the property or its proceeds; of which there was no proof, nor was the case tried on that theory. If the father was the real proprietor, it is plain the insurance company owed him

instead of the son, and could not be held as the debtor of the latter simply because of misleading representations or conduct on his part, of which his father was not guilty so as to estop him from claiming the insurance money as against a creditor of the son who had been entrapped by such false conduct into granting credit to the son. Nor could an estoppel be raised to the prejudice of the insurance company, unless it, too, was guilty of collusion in the matter.

We set out two of the instructions which illustrate the erroneous theory on which this issue was referred to the jury:

"The court instructs the jury that if they believe from the evidence the defendant in this case represented himself as Frank Mercurio, transacted business as Frank Mercurio, and acted so as to induce plaintiffs to believe he was Frank Mercurio *and owned the stock of goods insured*, he is estopped to deny he is Frank Mercurio, and plaintiff is entitled to recover the amount sued on provided the garnishee agreed on the loss, with said Mercurio as the sum of $375.70.

"The court instructs the jury that although they believe the defendant is not named Frank Mercurio but has some other name, yet if they find that defendant transacted business as Frank Mercurio, plaintiff is entitled to recover."

Of course, if the judgment was only against the young man, and the father was the proprietor, the garnishment proceeding must wholly fail.

V. Two other defenses were interposed by the garnishee and insisted on in instructions which were refused by the court. One was that there could be no recovery if the assured had made any false representations in regard to his title to the property. This was on an assumption that the son had falsely represented himself as the owner of the stock of goods when his father owned them; but it is obvious that defense would fall if the jury found the son to be the real owner.

It is also insisted by the company that the garnishment proceeding can not be maintained because proofs of loss were

not made by the young Mercurio prior to the answer of the garnishee nor, indeed, by any one prior to that time; and if the son was the beneficiary of the policy and the owner of the property covered by it, that the furnishing of proofs of loss was a condition precedent to any liability of the company or a recovery on the policy.

Money due on a policy of insurance is subject to garnishment according to the decisions in this State and elsewhere. Ritter v. Ins. Co., 28 Mo. App. 140. There is a conflict of opinion in the cases as to whether it may be garnished before the loss had been adjusted and the amount thereof definitely fixed by an agreement between the company and the policyholder, and likewise a conflict as to whether a creditor of the latter may garnish the company before proofs of loss have been furnished by the assured. The decisions turn largely on the wording of the garnishment statutes of different states, some of which authorize the garnishment of unliquidated claims while others do not. The rule in this jurisdiction is that only a debt or liability absolutely owing as a money demand and free from conditions or contingencies, is subject to garnishment. Holker v. Hennessey, 143 Mo. 80. It is also the rule that a judgment creditor invoking the remedy of garnishment occupies no more favorable position, nor enjoys any higher rights against the garnishee, than the judgment debtor would if he were proceeding to collect the claim, except in cases of fraud. Holker v. Hennessey, supra. The policy is preserved in the record and shows the company's uitlmate liability for a loss was contingent on the assured furnishing duly executed proofs of loss within sixty days after the occurrence of a fire. We think this made it necessary for the plaintiffs to show such proofs had been made out and delivered within the prescribed time and before the answer to the interrogatories was filed, or else that they were waived by the company, in order to fasten liability on the latter as a debtor of the execution defendant. This rule is in accordance

with an intimation contained in the opinion in Ritter v. Insurance Co., supra, and with the best considered cases, as we deem, in other jurisdictions where the garnishment laws are similar to our own. Davis v. Davis, 49 Maine 282; Barnett v. Sorsby, 34 La. Ann. 588; Bucklin v. New Hampshire Fire Ins. Co., 60 N. H. 119; Douglas v. Phoenix Ins. Co., 63 Hun. (N. Y.) 393; Stone v. Insurance Co.. 74 Md. 579; Martz v. Detroit F. & M. Ins. Co., 28 Mich. 201; Lovejoy v. Ins. Co., 11 Fed. 63.

In Hanover Ins. Co. v. Connor, 20 Ill. App. 297, the propriety of the above rule was recognized, though it was held the furnishing of proofs was not a condition precedent to hold the garnishee on the record before the court in that case, it not appearing that the policy required them to be furnished.

But it may be shown by a garnishing creditor of the assured as well as by the assured himself, that delivery of proofs of loss was dispensed with or waived by the company or its authorized agent, and whatever would constitute a waiver, or be evidence tending to show a waiver, in an action by the policy-holder, obtains likewise with the same force and effect in favor of a creditor of the policy-holder pursuing the company by garnishment. Ritter v. Insurance Co.; Lovejoy v. Id., supra; Boyle v. Id., 7 W. & S. 76; Ins. Co. v. West, 8 W. & S. 350. The theory of the plaintiffs on the trial of the cause and of the trial court was, that proofs of loss had been waived by an agreement reached by young Mercurio and Tucker, the company's local agent at Mexico, as to the amount of damage done by the fire. Said agreement was treated, in effect, as an absolute waiver; for the jury were instructed that so far as this point was concerned, plaintiffs were entitled to recover, provided the company agreed with said Mercurio that the loss sustained was three hundred and seventy-five dollars and seventy cents, and in other words of the same purport; while counter instructions requested by the appellant were refused. We would be disposed to consider the understanding

between the agent and the defendant (now conceded to be the son) as to what the loss amounted to, if there was nothing more in the record bearing on the question of waiver, as neither establishing nor tending to establish that execution and service of proofs of loss were in fact waived by the company; because the evidence shows without conflict, that instead of proofs being waived by the agent, they were demanded. What transpired between the company's adjuster and young Mercurio was an agreement as to the amount of damage done, which the adjuster stated at the time he had no power to settle for and that he agreed on the amount subject to the company's approval. After this sum was agreed on as a just estimate of the loss the assured had suffered, the agent filled up blank proofs of loss, tendered them to Mercurio and requested him to sign and swear to them as provided in the policy. Mercurio refused to do so on the ground that the burned goods had belonged to his father, who was the policy-holder.

Whether we accept the view that a waiver of proofs is a question of intention, as some courts, including this one, hold (Fink v. Insurance Co., 60 Mo. App. 673), or that it rests on estoppel, as others hold, it is equally impossible to conclude the company excused the assured from furnishing proofs of loss by the occurrences above stated. Surely it can not be said the agent intended to waive them when the evidence shows he demanded them; for a demand of performance is the very antithesis of waiver. Nor can we find any element of estoppel in the agent's words and acts—anything that was likely to mislead Mercurio or induce him to believe the company would not require proofs to be furnished. Instead of offering to pay the sum agreed to be the amount of damage done, Tucker expressly notified Mercurio he had no authority to pay but merely estimated the loss subject to the company's approval, and that proofs must be made out and delivered; nay, he went farther and prepared the proofs for execution. The only proper view of such acts is that instead of the adjuster

waiving proofs, the assured refused to furnish them; assuming that young Mercurio was the policy-holder. Very slight evidence of a waiver of this provision of a policy is held sufficient to uphold a finding against a company; but it would be against reason to hold the assured may peremptorily refuse to perform a condition and his creditor thereafter successfully maintain the company dispensed with performance, or estopped itself from insisting on a failure to perform in defense of an action on the contract. An agreement as to what damage was caused by the fire, accompanied with a demand that the policy-holder comply with the terms of the policy, is a different act from an offer to pay by the company, or some other expressed or implied acknowledgment of liability for the loss, or an absolute denial of liability, or silence as to requiring proofs when the amount of the loss is agreed on, or other acts or failures to act or speak, reasonably apt to induce a belief that they will not be required—totally different in principle; for the one course on the part of the adjuster positively notifies the assured that he must perform; the other tacitly notifies him he need not. It has accordingly been held that acts, coupled with a demand for proofs of loss, or for the performance of some other provision stipulated in the policy, do not excuse performance, though they would have that effect if done without such accompanying demand. Scottish Union Ins. Co. v. Clancy, 71 Tex. 5; Home Insurance Co. v. Davis, 98 Pa. St. 280; Insurance Co. of North America v. Bainbridge, 7 Ins. L. J. 772.

The stipulation in the policy as to proofs of loss is in the usual form and provides for much more than a statement of the amount of damages sustained; among other things that *the interest of the assured and of all others in the property* shall be stated in the document, which must be signed and verified by the policy-holder. The unwillingness of Mercurio junior, to make an affidavit as to the ownership of the goods, was his motive for refusing to furnish proofs and well justified the

company in claiming liability to him under the policy had not attached when it was garnished; for if he denied owning the goods and repudiated any claim to the proceeds thereof, or refused to take the necessary steps to lawfully assert his claim, certainly the company did not as yet owe him a debt absolutely due as a money demand and free from contingencies. This court has had occasion to consider heretofore the purpose of proofs of loss and what stipulation in regard to their contents an insurance company may insist on as important; the conclusion being that the provision in regard to showing in the proofs the ownership of the property insured is one that must be performed:

"Proofs of loss serve other purposes than a showing of value. By the conditions of the policy in this case the proofs of loss were required to show the ownership of the property and the bona fides of the loss under the oath of plaintiff. It is entirely proper and reasonable that the insurer should be advised on these points in order to make a settlement, and the insertion of a clause requiring such a statement under oath was a proper matter of self-protection, and in nowise affects the binding force of the statute as to the amount of payment under the policy." McCollum v. Ins. Co., 67 Mo. App. 79.

This view is wholly just and simply enforces a reasonable precaution taken by the companies to avoid being defrauded by claimants of indemnities due for losses, who did not in fact own the property destroyed. In the circumstances of this case, the evidence by no means warranted the assumption that Tucker, by agreeing with Mercurio upon the amount of damage done, *ipso facto* waived proofs of loss.

But there was testimony that in another garnishment case, the company had filed an answer admitting it owed the defendant the agreed amount of the loss. This testimony was in the form of secondary evidence and seems to have been admitted against the garnishee's objection without sufficient proof that the answer itself was unobtainable. But it was

received, and tended to show service of proofs of loss was not insisted on by the company as a condition precedent. Fink v. Ins. Co., supra. That testimony and the agreement fixing the amount of the loss sustained, were sufficient to submit the issue of waiver to the jury under proper instructions, to be determined by them according to the weight of the evidence.

What is said does not lose sight of the privilege of a creditor of the assured, sometimes recognized, to make proofs of loss himself, or what will be held to be equivalent to them in an equitable proceeding to reach the proceeds of the policy, if the assured does not, in order to hold the company. Northwestern Ins. Co. v. Atkins, 3 Bush. (Ky.) 378. That course was not pursued in the present case. Neither do we forget that the elder Mercurio, who resided in St. Louis, did, in fact make proofs. But nothing was shown as to whether they were made out and delivered to the company in time to support an action on the policy when the first answer to the interrogatories was filed, though it was incumbent on plaintiffs to show the conditions of the policy had been theretofore performed, or waived, as one or the other was indispensable to make the company liable to the execution debtor in a garnishment proceeding.

The judgment is reversed and the cause remanded to be tried in conformity to the views expressed in this opinion. *Bland, P. J.,* and *Barclay, J.,* concur.