Skelton v. Sackett.

SKELTON *et al.* v. SACKETT, *Appellant.*

**Jurisdiction:** ORDER OF PUBLICATION: INITIAL OF CHRISTIAN NAME. Where in an action against a non-resident, the order of publication against the defendant gave his name as Q. R. Noland instead of Quinces R. Noland, and there was no personal appearance under the order of publication, the court acquired no jurisdiction.

*Appeal from De Kalb Circuit Court.*—HON. JOS. P. GRUBB, Judge.

REVERSED.

*J. F. Harwood* and *Ramey & Brown* for appellant.

(1) Had the party intended as defendant been before the court, he must have pleaded the misnomer, or he would be bound by a judgment rendered against him in the name by which he was sued, otherwise the "court will take care that he is not prejudiced by any misnomer of his adversary." *Waterbury v. Myther*, 16 Wend. 611; *Entrekin v. Chambers*, 11 Kan. 368. And notice by publication by a wrong name is not sufficient to bring him before the court. *Entrekin v. Chambers, supra.* "Every person is presumed to have a christian name until the contrary is made to appear by proper averment." If initials are used instead, it is presumed to be a misnomer. *Gardner v. The State*, 4 Ind. 632. The above rule may be subject to an exception made in an English case, that where a single vowel immediately precedes a surname, the court will understand such vowel to be the christian name of the party. *Kinnersly v. Knott*, 7 D. and L. 128. If the above exception applied to this case, it would be fatal to plaintiffs' title, for it would show that the judgment depended on to sustain the title was against a different person than the

owner of the land. (2) There is no evidence in this case that Q. R. Noland and Quinces R. Noland, the owner of the land, are one and the same person, and this fact will not be presumed. *Loudon v. Walpole*, 1 Ind. 321; *Bennett v. Libhart*, 27 Mich. 489.

*Haynes & Haynes* for respondents.

NORTON, C. J.—This is a suit in ejectment by the widow and heirs of Charles W. Skelton to recover possession of the west half of northwest quarter of section 5, township 27, range 30, in De Kalb county. In support of their title, plaintiffs put in evidence an exemplification, duly authenticated, of letters patent of the United States, dated in 1856, granting the above described land to one Quinces R. Noland; they also put in evidence a tax deed reciting in substance that, on the eleventh of October, 1878, judgment was rendered in the De Kalb county circuit court in favor of the state at the relation of the collector of said county, and against Q. R. Noland and Joseph A. Woodward, for the sum of $12.75, delinquent taxes on the said land for the year 1876, and costs taxed at $20.55, which judgment was declared to be a lien on said land, and that, in pursuance of an execution issued on said judgment, the land was sold to Charles W. Skelton for the sum of $1.45. This deed was admitted in evidence without objections. Evidence was introduced by plaintiffs showing that said Charles Skelton died intestate, and that plaintiffs were his heirs.

Defendant introduced in evidence the record and proceedings in the tax suit, from which it appeared that the suit was brought against Q. R. Noland and Joseph A. Woodward; that it was alleged in the petition that they were non-residents of the state; that defendants were notified by publication in a newspaper of the pendency of the suit, and not otherwise; that defendants

did not appear in said suit, and that in all the proceedings in said suit the name of said Noland appeared as Q. R. Noland, and not otherwise. The defendant offered to prove that all the taxes on said land for the year 1876, had been paid prior to the bringing of said suit, which the court, on objection of plaintiffs, refused to receive.

On this state of the case the court instructed the jury that plaintiffs were entitled to recover, and judgment was rendered accordingly, from which defendant has appealed, and contends that the circuit court, in virtue of the tax suit against Q. R. Noland and Joseph A. Woodward, and the order of publication of notice made therein, did not acquire jurisdiction of Quinces R. Noland; that no presumption in law is to be indulged that Q. stands for Quinces, and that an order of publication against a defendant which gives the initial letter of a christian name, where there is no appearance under such publication, does not give the court jurisdiction.

We are of the opinion that the above points are well taken. While it has been held by this court that the middle name of a person is no part of his name, this rule has never been extended to the christian name, but, on the contrary, the law presumes that every person has a christian as well as a surname, and in the case of *Martin v. Barron*, 37 Mo. 301, where the main point relied upon by the defence was, that defendant being described in the writ by the initial of his christian name, and the officer's return of service being in the same defective manner, that there was nothing to show on the record that he was ever served with process, or that the court acquired jurisdiction over him, and that the proceeding and judgment are void, it is said: "The christian and surname of both plaintiff and defendant should be set forth with accuracy; for, since names are the only marks and *indicia* which human kind can understand each other by, if the name be omitted or mistaken, there.

is a complaint against nobody. But, when the service has been read by a wrong name, the misnomer or want of a name is pleadable in abatement only." It is very clear from the above case, that when a party is sued by a wrong name, and service of the writ is actually made on the person intended, and he does not appear and plead in abatement, that the judgment rendered in such case is not void.

But a distinction exists between such a case and a case where the suit is against a non-resident, where the only notice is by publication of notice and no appearance is made. In the former case where there is a mistake in the name, and the writ is served on the right party, he is thereby informed that he is the person meant; and to take advantage of the misnomer, he must appear and plead the misnomer in abatement. In the latter case, where a wrong name is used in an order of publication, the party really intended· receives no such notice that he is the party intended as one who is personally served with a writ, which service designates him as the person meant to be sued

While the service of the writ in the former case is a demonstration that the person upon whom it is served is the person intended to be sued,. in the latter case notice by publication is a proceeding against the name, and to give such notice as the service of a writ imparts it should be correctly set forth, and if it is not so set forth, it is ineffectual as a notice. It would seem that an order of publication of notice against J. Smith would impart the same notice to James, Joseph, John, Jonathan or Jackson Smith, but it would not impart to any one of them notice of the fact that he was the J. Smith intended by the notice, while the service of a writ upon any one of them would inform him that he was the Smith intended. These views seem to be supported by the case of *Gardner v. State*, 4 Ind. 632; *Entreken v.*

*Chambers*, 11 Kansas, 368; *Bray v. McClurg*, 55 Mo. 128.

The judgment is reversed and the cause remanded, in which all the judges concur except the writer of this opinion.