Corrigan v. Schmidt.

## CORRIGAN *et al.* v. SCHMIDT *et al.*, *Appellants.*

Division Two, January 9, 1895.

1. **Practice:** NAME: MISNOMER. The omission of the initial letter of defendant's middle name in a suit against him does not constitute a misnomer.

2. ——: ——: ——: PUBLICATION. John Owen Corrigan and Elizabeth Alicia Corrigan were sued for delinquent taxes as "Owen Corrigan" and "Elisha Corrigan," respectively, the service being by publication; *held,* there was a misnomer.

3. ——: ——: ——: ——. Such misnomer, the service being by publication, rendered the judgment absolutely void against said defendants.

4. **Delinquent Taxes:** SHERIFF'S SALE: DIVISION OF LAND: MINORS. The sale of a lot at sheriff's sale for taxes for an inadequate price when it was susceptible of division, and a part of it would have satisfied the debt, will be set aside, especially at the instance of minor defendants to the tax suit.

5. ——: ——: ——: ——: INNOCENT PURCHASERS. The fact that the land has, since the sale, been conveyed by the purchaser thereat is immaterial, where the second purchaser is not an innocent one.

6. ———: ———: SUIT TO VACATE: PARTIES. Where a tax sale is void as to several of the defendants but only voidable as to others, and the defendants as to whom the sale is void acquire the interest of a defendant as to whom the sale is voidable merely, a suit in equity by all to set aside the sale may be maintained.

*Appeal from St. Louis City Circuit Court.*—HON. L. B. VALLIANT, Judge.

AFFIRMED.

*M. Hilton* for appellants.

(1) A middle letter is no part of a name, and its omission is not a misnomer or variance. *Smith v. Ross*, 7 Mo. 463; *Orme v. Shephard*, 7 Mo. 606; *Tallmadge v. Franklin*, 5 Johns. 84; *Keene v. Mead*, 3 Pet. Sup. Ct. U. S., p. 1. (2) When personal service is had on a defendant, jurisdiction is obtained, although he may be sued by the wrong name; and, even when summoned by publication, it is sufficient to employ the Christian name by which he is generally known. *Steinman v. Strimple*, 29 Mo. App. 478. (3) Where the name by which the defendant was published is *idem sonans* with his real name, he was properly served; and when they sound nearly alike as popularly pronounced, they are *idem sonans*. *State v. Pullens*, 81 Mo. 387. (4) "Possibly the fact that the sheriff sold the entire addition in a lump would have been ground for setting aside the sale, had timely proceedings been taken for that purpose, but the sale is not void. Such a complaint would not be heard, even in a proceeding to set aside the sale at this late day and after the rights of third persons have attached; much less is the sale void or voidable for any such reason." Freeman on Executions, sec. 307; *Bouldin v. Ewart*, 63 Mo. 330. There may be laches within the statute of limitations. Minors may be

guilty of laches. *Kline v. Vogel*, 90 Mo. 239; *Fuller v. Montague*, 53 Fed. Rep. 204. (5) The answer of the minors in the tax suit by their guardian *ad litem* was sufficient. *Pevely v. Skinner*, 33 Mo. 28; *Baldwin v. Whaley*, 78 Mo. 186; Freeman on Judgments, sec. 487. (6) A purchaser at a tax sale under the law of 1877, acquires whatever title defendant in the execution had and none other. It follows that where there are several tenants in common, one alone may be divested of his title at a tax sale. *Watt v. Donnell*, 80 Mo. 195; *Lott v. Payne*, 90 Mo. 676; *Boyd v. Ellis*, 107 Mo. 394; *Campbell v. Gas Light Co.*, 84 Mo. 366. (7) Plaintiff's bill should have been dismissed as to any one of them not sued or served as defendant in the tax suit, for the interest of such party was not affected by the tax sale, and he or she had a clear remedy in ejectment. *Humphreys v. Milling Co.*, 98 Mo. 542; *Fontaine v. Hudson*, 93 Mo. 62.

*J. E. & J. F. Merryman* for respondents.

(1) The tax sale was void as to John O. Corrigan, who was proceeded against as Owen Corrigan. *Skelton v. Sackett*, 91 Mo. 379. (2) Elizabeth Corrigan was not a party to the suit and had no notice of it, but one Elisha Corrigan was made a party and the evidence shows that Patrick Corrigan had no child by the name of Elisha. (3) The property should have been sold in parcels. *Gordon v. O'Neil*, 96 Mo. 350; *Nelson v. Brown*, 23 Mo. 13; *State ex rel. v. Yancy*, 61 Mo. 399.

BURGESS, J.—This is an action to set aside a judgment for taxes and sale thereunder and to set aside a deed by John J. Kane, the purchaser at said sale, to the defendants Brownley and wife, and from Brownley and wife to defendants Schmidt and judgment for posses-

sion of the premises, and monthly rents and profits against said Schmidts. The salient facts of the case as disclosed by the record are about as follows:

The mother of the plaintiffs died in 1879, and their father, Patrick J. Corrigan, died on the seventh day of O ctober, 1880, leaving the following children his only heirs at law: Mary A., aged fifteen years; John O., aged fourteen years; Francis J., aged thirteen years; Leonard, aged ten years, and Elizabeth F. Corrigan, aged four years. At the time of his decease, Patrick J. Corrigan owned the following real estate, situate in the city of St. Louis, and described as follows: The south half of lot 12 in Gimblin's addition, now block 4255, city of St. Louis on Bellefontaine road, having a front on said road of fifty-nine feet and six inches (59 ft. 6 in.) and four hundred and ninety-eight feet and two inches in depth (498 ft. 2 in.), and upon which lot he had built a blacksmith and wagon shops of the value of $700 fronting on the Bellefontaine road, now Broadway street; and on the other end of the lot, fronting on Church street, he built a dwelling house, a brick smokehouse, stable and other outhouses.

On the twelfth day of October, 1882, the defendant Nathaniel C. Hudson as collector of the revenue for the city of St. Louis commenced an action in the circuit court of the city of St. Louis, state of Missouri, wherein the state of Missouri, at the relation and to the use of Nathaniel C. Hudson, collector of the city of St. Louis, in the state of Missouri, was the plaintiff, and Mary Corrigan, a minor; Frank Corrigan, a minor; Owen Corrigan, a minor; Leonard Corrigan, a minor; Elisha Corrigan, a minor, were defendants; on which a summons issued to the sheriff of the city of St. Louis and was returned executed on Mary Corrigan, Frank Corrigan and Leonard Corrigan, and a return of "not found" was made as to Owen

Corrigan and Elisha Corrigan. And at the December term of said court and on the twenty-second day of January, 1883, an order of publication was granted by the court as to Owen Corrigan and Elisha Corrigan, which was published in the St. Louis *Post-Dispatch*, a newspaper printed in the city of St. Louis, and proof of the same was filed the twenty-eighth day of February, 1883, in said cause. The object of said suit was to enforce the lien of the state of Missouri for the delinquent taxes against said lot for the years 1878, 1879 and 1880 for the sum of $33.30 together with interest and costs.

At the April term of said court, 1883, Charles H. Chapin was appointed by said court guardian *ad litem* for Mary Corrigan, Frank Corrigan, Owen Corrigan, Elisha Corrigan and Leonard Corrigan, who filed answer as such guardian. On the twenty-third day of April, 1883, a judgment *in rem* was rendered in said cause for the sum of $46.65 together with costs of suit; and the said real estate, or so much thereof as would satisfy the debt and costs, was ordered to be sold. A special execution was issued on said judgment on the seventeenth day of May, 1883, commanding the sheriff of the city of St. Louis, Isaac M. Mason, that of the property hereinbefore described, or so much thereof as may be necessary, he cause to be made the judgment, interest and costs as aforesaid. And on the twenty-third day of June, 1883, said real estate was sold at public sale by the said defendant, Isaac M. Mason, as sheriff as aforesaid; and John J. Kane became the purchaser for the sum of $405. Mason returned the execution with an indorsement that he had sold the said real estate as sheriff as aforesaid for the sum of $405 to John J. Kane and that, after satisfying said judgment and costs, there remained a surplus in his hands of $296.75. And on the second day of July, 1883, the

said John J. Kane having paid the purchase money, a deed was executed and acknowledged in open court by said Mason to the said John J. Kane of said real estate.

In the tax suit Elizabeth Corrigan was not made a party and had no notice of it, but one Elisha Corrigan was made a party, and the evidence is, that Patrick Corrigan had no child by the name of Elisha. The evidence further discloses the fact that John O. Corrigan was sued, if by any name, by the name of Owen Corrigan and there was a return of the officer as to him and also as to Elisha Corrigan of "not found," and they were notified, both Owen and Elisha, by an order of publication. From the time of the institution of the suit to the day of the rendition of the judgment Elizabeth Corrigan and John O. or Owen Corrigan were living in St. Louis county or the city of St. Louis.

The lot was over four hundred and ninety-eight feet (498 ft.) in depth, and on Church street, the west end of the lot, and on all the lots in that block, there were valuable residences, and on the east end of the lot and most all the lots in the block there were business houses, fronting on Bellefontaine or Broadway. The evidence establishes the fact that the property was susceptible of division and some of the lots in the block located on both the north side and the south side have been divided and sold; the west end for residences and the east for business houses.

The court rendered a decree in favor of the plaintiff, setting aside the sheriff's sale, on the nineteenth day of June, 1893. Defendants Schmidt and wife filed a motion for a new trial, and defendant Kane filed a motion to reform the judgment and decree, claiming the money. On the twenty-fourth day of July the court overruled the motion for a new trial and also the motion of Kane to reform judgment, and at the same

time there was a judgment and decree rendered reforming the first, and rendering another full and final judgment and decree in the case, in which the former judgment is changed by charging Schmidt and wife $6 per month rent instead of $10 as found in the former judgment, and also the court ascertained and found the value of the improvement made by Schmidt and wife on the property and rendered a decree in their favor for $135. In the judgment and decree of the court modifying the former decree all the parties acquiesced as there were no exceptions taken and no motion for a new trial filed by either of the parties with respect thereto.

John O. and Mary A. Corrigan died subsequently to the rendition of the judgment in the tax suit, and before the institution of this suit, unmarried, leaving the plaintiffs their only heirs at law. The case is in this court on appeal by defendants Schmidt.

The first point raised by defendants, which we think necessary to notice, is that a middle letter is no part of the name, and its omission is not a misnomer or variance. This seems to have been so held in *Smith v. Ross*, 7 Mo. 463; *Orme v. Shephard*, 7 Mo. 606; *Beckner v. McLinn*, 107 Mo. 277. In the tax suit Francis J. Corrigan, one of the plaintiffs herein, was sued, and process was served upon him as Frank Corrigan, and this we think sufficient to give the court jurisdiction over him. *Steinmann v. Strimple*, 29 Mo. App. 478. It would also seem, under the rulings of this court, in the three cases first herein cited, that the service on Mary A. as Mary, and Leonard D. as Leonard, was all that was necessary, and that the court by reason thereof acquired jurisdiction over them also in said suit.

As to John Owen and Elizabeth Alicia, the record shows no personal service, but a notice of publication

against them as Owen Corrigan and Elisha Corrigan, while the former's name was John Owen Corrigan, and the latter's, Elizabeth Alicia Corrigan. In case where service of process is attempted to be had constructively, as by publication, a strict adherence to the forms of law must be observed; much more so than if the service is personal. While the middle name of a person is no part of his name, the presumption is that every person has a Christian name, and, as was said in *Martin v. Barron*, 37 Mo. 301, "the Christian and surname of both plaintiff and defendant should be set forth with accuracy; for since names are the only marks and *indicia* which humankind can understand each other by, if the name be omitted or mistaken, there is a complaint against nobody. But where service has been read by a wrong name, the misnomer or want of a name is pleadable in abatement only."

If, when a party is sued by a wrong name, and served by personal service, and he is really the right party, he does not appear and plead in abatement the judgment is not void. "But a distinction exists between such a case and a case were the suit is against a nonresident, where the only notice is by publication of notice and no appearance is made. In the former case where there is a mistake in the name, and the writ is served on the right party, he is thereby informed that he is the person meant; and to take advantage of the misnomer, he must appear and plead the misnomer in abatement. In the latter case, where a wrong name is used in an order of publication, the party really intended receives no such notice that he is the party intended as the one who is personally served with a writ, which service designates him as the person meant to be sued." *Skelton v. Sackett*, 91 Mo. 377. From these considerations it must necessarily follow that the judgment against John O. and Elizabeth A. Corrigan

was absolutely void, for want of jurisdiction of the court over them.

The lot was sold in one body, and, although it might have been divided and a less quantity sold in payment of the judgment for taxes and costs, it is argued that at most this was only an irregularity of which advantage could only be taken by motion to set aside the sale at the return term of the execution, or by suit in equity brought before innocent or third parties should become interested in the property. To this proposition we agree, *provided* the parties becoming interested subsequently to the tax sale are innocent purchasers in good faith without actual notice or knowledge of such facts as would put a reasonably prudent person upon inquiry under similar circumstances. But the defendants Schmidt do not occupy any such vantage ground. In fact, they do not claim in their answer to be innocent purchasers, *in good faith*. This, it has been said, is a serious defect. *Insurance Company v. Smith*, 117 Mo. 261. Moreover, defendants had paid only a portion of the purchase money at the time of the commencement of this suit.

There was no fraud alleged or proven with respect of the sale, and while the evidence did not show the value of the lot except indirectly, it did show that it brought at the tax sale, June 23, 1883, $405, while the judgment against it rendered April 23, 1883, was $46.65. Defendants Schmidt, from what appears from their deed to the property from Brumley and wife, dated the seventeenth day of December, 1889, agreed to pay $1,350 for it—$400 cash, the balance to be paid in one, two, three, four, five, six, seven and eight years from that date.

That the lot was susceptible of division is clearly shown by the evidence. It was four hundred and ninety-eight feet, two inches in depth, and fifty-nine

feet, six inches in width, fronting on Bellefontaine and Church street, having a dwelling house upon one end and a blacksmithing shop on the other. By section 7683, Revised Statutes, 1889, it is provided that where a judgment shall be rendered for delinquent taxes against real estate it shall be decreed that the lien of the state be enforced, and that the real estate, or so much thereof as may be necessary to satisfy the judgment, interest, and costs, be sold, and this was the command of the execution issued upon said judgment, and under which the lot was sold for $405, while the judgment, interest and costs all told amounted to $108.25. Under these circumstances, ought the sheriff's sale of the lot for taxes be permitted to stand?

The plaintiffs were all minors and orphans at the time of the institution of the suit for taxes, wards, as it were, of a court of equity, which will scan closely every step taken, and see that their interests are not frittered away by some irregularity or nonobservance of the law.

That courts will not as a general proposition, set aside judicial sales merely upon the ground of inadequacy of price, unless the price is so inadequate as to shock the moral sense and outrage the conscience, is well settled in this state. *Railroad v. Brown*, 43 Mo. 294; *Holden v. Vaughan*, 64 Mo. 588; *Gordon v. O'Neil*, 96 Mo. 350. *Gordon v. O'Neil* was a suit to set aside a sale of a lot in Kansas City under a judgment against it in favor of the city for taxes, because of inadequacy of price, and because of the failure, by the sheriff, to divide the lot, and sell only enough to pay the taxes, and BLACK, J., speaking for the court, said: "But section 6, article 7, of the charter of the City of Kansas provides that the special execution in these cases shall command the sheriff, 'in case said

assessment, interest and costs be not paid to him, to sell the property therein described, or so much thereof as may be necessary to pay such assessment, interest and costs.' Under this statute, the officer had the power to divide the property. It contemplates that the officer will exercise a sound discretion in the matter, and, if the property is fairly and reasonably susceptible of division, he ought to make the division, and sell only so much as will satisfy the execution. It may be that this property, if offered as a whole at private sale, would sell for as much as if offered in parcels, but that is not the criterion. If the property can be divided without prejudice, and a part will sell for the debt and costs, a part only shall be sold.''

The language of the statute above referred to in regard to the judgment, and the words commanding the levy in the execution in the tax case, are in almost the exact language that the city ordinance is in which is referred to in the *O'Neil case*, and are certainly as mandatory in their scope and meaning.

So far as the interest of plaintiff Elizabeth A. Corrigan in the property which she derived by inheritance from her father is concerned, and the interest she acquired in the same way from her brother, John O. Corrigan, deceased, she had an action at law to recover the same, because of the invalidity of the judgment against her and John O. in the tax suit, but as to her interest which she acquired by inheritance from her sister, Mary A., she had no remedy except in equity to set the sale aside because of its irregularity, as the judgment against Mary A. was not void. We can, therefore, see no good reason why the whole controversy may not be settled in this one action.

There was no such laches upon the part of plaintiffs as should estop them from prosecuting this suit,

which was evidently so found by the trial court, to whose judgment we must largely defer. The judgment is affirmed. All of this division concur.