Burge v. Burge.

LOUISA BURGE, Appellant, v. WM. O. BURGE, Administrator, etc., Respondent.

**Kansas City Court of Appeals, April 7, 1902.**

1. **Administration: GRANT OF LETTERS: APPEALS.** Where the right to administer is denied by the probate court, the claimant may appeal to the circuit court and may likewise prosecute an appeal from the decision of that court.

2. **Trial Practice: CONSTRUCTIVE SERVICE: DIVORCE: NAMES.** Section 575, Revised Statutes 1899, means that the names of non-residents or absent defendants shall be specified in the order of publication with accuracy, otherwise there is no notice and the proceedings are void.

3. ———: ———: ———: ———: **IDEM SONANS.** Names are *idem sonans* if the attentive ear finds difficulty in distinguishing them or long usage has given them the same pronunciation; but "Emma" is not *idem sonans* with "Emily" and the evidence fails to show that defendant in the divorce suit was known as "Emma" and not "Emily."

4. **Divorce: ESTOPPEL: IN REM: IN PERSONAM.** A decree of divorce without notice to the defendant is a nullity and divorce, per se, can not be established by estoppel, though the parties may estop themselves as to a judgment *in personam* granting alimony.

5. ———: **PRIVITY: JUDGMENT: ESTOPPEL: PROPERTY RELATION.** B. sued his wife for divorce and the decree was void for want of notice. He married again and died. His son took out letters of administration on his estate. The last wife claimed her right to administer. The son denied her relation of widow by reason of the invalidity of the divorce decree against the former wife. *Held*, he was not estopped by the decree nor privy thereto since the ground of privity is a property and not a personal relation.

6. **Evidence: DIVORCE: DECREE: IMPEACHMENT: PAROL.** A decree for divorce may be impeached by parol evidence showing the failure of service.

Appeal from Cooper Circuit Court.—*Hon. Jas. 'E. Hazell,* Judge.

AFFIRMED.

*W. G. & G. T. Pendleton* and *M. T. January* for appellant.

(1)   A judgment or decree of a court of this State can not be attacked collaterally, except on the ground of want of jurisdiction.   Rosenheim v. Hartsock, 90 Mo. 357; Black on Judgments, sec. 803; Winningham v. Trueblood, 149 Mo. 572.   (2)   Absence of jurisdiction over the subject-matter or person can only be shown from the record, and can not be shown by matter *in pais.*   Black on Judgments, sec. 271; Reed Bros. v. Nicholson, 158 Mo. 624; Cox v. Boyce, 152 Mo. 576.   (3)   Where jurisdiction is dependent upon facts outside of the record, the court rendering a judgment will be presumed to have found the facts conferring jurisdiction, and this presumption can not be disputed by oral testimony.   Cox v. Boyce, 152 Mo. 576; Werz v. Werz, 11 Mo. App. 26; Van Vleet on Collateral Attack, sec. 62, p. 83; Hilbish v. Hattel, 33 L. R. A. 783.   (4)   When a court has jurisdiction of a divorce suit, its decree can not be questioned on any ground in any other court in this State.   R. S. 1899, sec. 2931; Mansfield v. Mansfield, 26 Mo. 163; Salisbury v. Salisbury, 92 Mo. 683.   (5)   A party who has accepted the benefits of a divorce is estopped to deny the authority of the court by which it was rendered.   Ellis v. White, 61 Iowa 644; 1 Bishop on Marriage, Divorce and Separation, sec. 1470; Richeson v. Simmons, 47 Mo. 20; Asbury v. Powers, 65 S. W. 605.   (6)   A name is only a means of identity; Parry v. Woodson, 33 Mo. 347; Cruzen v. Stephens, 123 Mo. 337. (7) Other descriptive terms may help and. correct a misnomer. 16 Am. and Eng. Ency. of Law (1 Ed.), 127; Cruzen v.

Stephens, 123 Mo. 337; Tanning v. Kraphl, 68 Iowa 244; Lane v. Innes, 43 Minn. 137; Porter v. Stout, 73 Ind. 3; Preston v. Dunn, 25 Ala. 507; Schee v. LaGrange, 78 Iowa 101. (8·) Abbreviations of the given name are so common, that without any violation of the laws of the land the courts may take judicial notice of them. Fenton v. Perkins, 3 Mo. 144; Exendine v. Morris, 8 Mo. App. 387; Weaver v. McElhenon, 13 Mo. 89. (9) The same is true of nicknames. Ellison v. Martin, 53 Mo. 575; Walter v. State, 105 Ind. 589; Shelbourne v. Rochester, 1 Pick. 470. (10) The names Emma, Emily and Emeline, are all derived from the same root and are commonly used interchangeably. Webster's International Dictionary, page 1905.

*W. M. Williams* and *John Cosgrove* for respondent.

(1) "All marriages when either of the parties has a former wife or husband living, shall be void, unless the former marriage shall have been dissolved." ·R. S. 1899, sec. 4313. (2) A man or woman who commences a suit for divorce must sue the defendant in his or her Christian name when the service is constructive. 2 Bishop on Marriage, Divorce and Separation, sec. 553 and note; 2 Nelson on Divorce and Separation, sec. 1052, p. 1012; R. S. 1899, sec. 579; Hubner v. Reickhoff, 72 N. W. 540, 103 Iowa 368, and cases cited. (3) The publication against "Emma" Burge, was insufficient, against "Emily" Burge. Troyer v. Wood, 96 Mo. 478; Chamberlain v. Blodgett, 96 Mo. 482; Whelen ·v. Weaver, 93 Mo. 430; Skelton v. Sackett, 91 Mo. 377; Corrigan v. Schmidt, 126 Mo. 304; Turner v. Gregory, 151 Mo. 100, and cases cited; 1 Black on Judgments, sec. 406; Heil and Lauers' Appeal, 40 Pa. St. 453; Clay v. O'Shea, 75 N. W. 115, 72 Minn. 105. The publication to "Emma" Burge is not aided by the statement that the suit is by "O. F." Burge.

(4) The judgment obtained in the circuit court in Cedar county, on publication of notice in favor of O. F. Burge v. Emma Burge, can not, as a legal conclusion, be held to be a legal service on Emily Burge and therefore the court had no jurisdiction and the judgment is absolutely void and was subject to attack in any proceeding in which it is sought to be made effective. Turner v. Gregory, 151 Mo. 100; Hubner v. Reickhoff, 72 N. W. 540, 103 Iowa 368; Myer v. Kuhn, U. S. C. C. App. R. 298, and cases cited. (5) Appellant complains because respondent upon the trial in the circuit court offered parol evidence, to impeach the judgment of the Cedar Circuit Court. If it becomes necessary for appellant to sustain the judgment by parol evidence it should not be considered error for respondent to resort to the same kind of evidence to destroy it. But the court did not rule that such evidence was competent. (6) The fact that Mr. Davidson, who was attorney for Oscar F. Burge in the divorce suit against Emma Burge, testified that O. F. Burge often told him that his home was in Cooper county and that he wrote his name in a public hotel register giving his residence as Boonville, was not a disclosure of any confidential communication. They were matters of public notoriety. Standard Oil Co. v. Drug Co., 84 Mo. App. 76. (7) The appeal in this case can not be sustained. A person can not appeal from an order of court refusing letters of administration. State ex rel. v. Fowler, 108 Mo. 465.

SMITH, P. J.—In the latter part of the year 1900, one O. F. Burge departed this life at the county of Cooper, in this State, first having made a last will and testament wherein he named and appointed two executors thereof, one of whom died and the other resigned. Afterwards, letters of administration with the will annexed were granted by the probate court of said county to the defendant herein, a son of the decedent, who qualified and took charge of the latter's estate.

The plaintiff, who claims to be the widow of the decedent, did not apply for letters of administration on his estate until after the grant of letters to the defendant, when she appeared in the probate court and filed a motion wherein it was stated that she was the widow of the decedent; that she had the priority in the right to administer on said estate; that no citation to appear and administer had been served upon her, and that she had not renounced or waived her statutory right of administration; that without notice to her, letters had been granted to defendant, a son of the deceased, and that she therefore prayed the court to revoke the letters granted to said defendant and to grant the same to her.

This motion was sustained by the probate court and an order was made accordingly, from which the defendant appealed to the circuit court where there was a hearing which resulted in an order denying the plaintiff's motion. From this order the plaintiff has appealed.

I.   At the very threshold, our right to review the several rulings of the trial court, assigned as error, is challenged on the ground that under the statute no appeal from the order of the court refusing to revoke the defendant's letters could be allowed.

When an appeal is taken from the decision of a probate court in any one of the cases specified in section 278, Revised Statutes 1899, and the transcript of the record and proceedings relating to the case with the original papers are filed in the office of the clerk of the circuit court, the latter court shall be possessed of the cause and shall proceed to hear, try and determine the same anew, without regarding any error, defect or other imperfection in the proceedings of the former. R. S. 1899, secs. 284, 285; Ferry v. McGowan, 68 Mo. App. 612.   When a case is thus removed into the circuit court, it is not different than if it had been originally brought there. As to such case the circuit court stands in the place of the probate court and exercises a like jurisdiction. An appeal

taken from any order or judgment of the circuit court in such cases is in effect the same as if it had been made or given in the probate court.    If an appeal would not lie from it if made by the probate court it would not of course lie if such order be made by the circuit court; or, in other words, if an appeal does lie from such an order when made by one court, it would not in the other.

The defendant's challenge of the plaintiff's right to an appeal can not be upheld, for it has been authoritatively ruled that where the claim of a right under the statute to administer is denied by the probate court the claimant may have an appeal.    State v. Collier, 62 Mo. App. 38, and State v. Fowler, 108 Mo. 465, hold no more than that an appeal does not lie from an order appointing an administrator, and as we have no such order here the application of the rule in that case can not be invoked by the defendant in this.

II.    The issue of fact on which the case was made mainly to turn in the trial court was whether or not the plaintiff was the lawful wife of the decedent at the time of his death. It appears from the evidence that the decedent was thrice married.    The first wife died, and it is claimed by the plaintiff that he was divorced from the second; and that the plaintiff being the third, survived him and is therefore his lawful widow.

To maintain the issue, the plaintiff put in evidence a certificate of her marriage with the decedent in 1892.    The defendant then put in evidence a further certificate showing the solemnization of the marriage of decedent with Emily Buckmaster in 1888, coupled with parol evidence showing that she was alive at the time of the trial.    The plaintiff then introduced the record of the proceedings of the circuit court of Cedar county, in this State, in a certain action wherein O. F. Burge was plaintiff and Emma Burge was defendant, from which it appears that a judgment was given therein on constructive notice, or notice by publication.

It is contended that the said record on its face shows that the court was without jurisdiction; that the divorce was granted upon an order of publication wherein the plaintiff was described simply by his initials and defendant not by her own name, being that of *Emily* Burge and that of the party notified to appear to the suit was that of *Emma* Burge. In actions of divorce, if the absent defendant is brought before the court by constructive notice, it is essential that the statute providing for such notice must be strictly complied with; otherwise, the proceeding will be void. Notice is essential to jurisdiction; and to give judgment without it is to disregard the maxim, *audi alteram partem.* Such a judgment would possess none of the qualities of a judicial determination and can not be upheld. And proceeding *in rem* or *quasi in rem* are not exempt from the operation of the rule which makes notice in some form essential to jurisdiction. Troyer v. Wood, 96 Mo. loc. cit. 480, and cases there cited. The question which we must now determine is whether or not the publication of the notice of the commencement of this suit and its general nature and objects directed to "Emma Burge," was sufficient to authorize judgment against the defendant whose Christian name was "Emily."

The statute (sec. 575, R. S. 1899) requires that in the several kinds of suits therein specified, where the ordinary process of the law can not be served on the defendant, the court or clerk in vacation shall make an order directed to the non-residents or absentees notifying them of the commencement of the suit, etc. "This section means *the names* of such non-residents or absentees shall be specified in the order. In no other conceivable way could the order be directed to them." Troyer v. Wood, supra. *"And if not named in the order of publication and named correctly* the substituted service of process is as void and valueless as if a *blank had* been left where the wrong name was inserted. Chamberlain v. Blodgett, 96 Mo. 482. "When a wrong name is used in an order of pub-

lication, the party really intended receives *no such notice* that he is the party intended as the one who is personally served with a writ which designates him as the person to be sued." Skelton v. Sackett, 91 Mo. 377. *"The Christian and surname of both plaintiff and defendant should be set forth with accuracy,* for since names are the only marks and *indicia* which human kind can understand each other by, if the name be omitted or mistaken *there is a complaint against nobody."* Martin v. Barron, 37 Mo. 301; Turner v. Gregory, 151 Mo. loc. cit. 103. "Names are said to be *idem sonans* if the attentive ear finds difficulty in distinguishing them when pronounced, or common and long continued usage has by corruption or abbreviation made them *identical in pronunciation."* Robson v. Thomas, 55 Mo. 582. As illustrative of the rules just referred to, a few of the many cases cited may be mentioned:

In Whelan v. Weaver, 93 Mo. 430, it was held that *Wheler* and *Whelen* were not the same and not *idem sonans.* In Corrigan v. Schmidt, 126 Mo. 304, it was said that a notice by publication to *Owen Corrigan* and *Elisha Corrigan* did not authorize a judgment against *John Owen Corrigan* and *Elizabeth Alice Corrigan.* In Elting v. Gould, 96 Mo. 535, the order of publication was to R. O. Elting, and it was held not notice to Richard O. Elting; but it was further held that inasmuch as by the latter name he saw fit to take title to the land, and by the former name place it on record, he was estopped to say the initials in the order of publication were not a sufficient designation of himself.

In a suit for divorce by Amanda M. Keisel against Heindrick Keisel, the publication of the notice was to Heindrick "Keesel;" and in Hubner v. Reickhoff, 103 Iowa 368, where the record of the judgment in the said divorce suit was before the court it was said: "This question being jurisdictional, it can not well be claimed that the decree in the divorce proceeding is conclusive against collateral attack. If the sub-

stituted service was not, as a legal conclusion, on Heindrick Keisel, there was an entire want of jurisdiction, and the decree is absolutely void, and may be attacked in any proceeding in which it is sought to be made effective. 1 Black on Judg., sec. 170; Jordan v. Brown, 71 Iowa 421. It is not a case of a defective service of notice, but one of no notice on Heindrick Keisel." In Thomas v. Densey, 57 Iowa 58, it was held that "Helen" and "Elen" were not the same Christian names.

In Turner v. Gregory, ante, it was held that an order of publication which is directed to the defendant by the initials of his Christian name, is not sufficient to give jurisdiction. Skelton v. Sackett, ante. In Cruzen v. Stephens, 123 Mo. 337, it was held that where the notice names the parties defendant with sufficient definiteness to plainly indicate their identity, it should be held good and not open to collateral attack. And that where the notice was to the wife by her full name, Etta R. Fisher, and her husband, and the latter was described as "——————— Fisher her husband" that such notice was good and the judgment thereon was not subject to collateral attack. This ruling does not seem to be in entire accord with Turner v. Gregory, ante, where it was held that "on notifying a person by publication he can only be designated *by his name* (Troyer v. Wood, 96 Mo. 480, and Chamberlain v. Blodgett, 96 Mo. 482), and if his name be omitted or a *wrong name* is attributed to him, it is at once evident that he receives no notice in fact." Nor is it in entire accord with the ruling in Skelton v. Sackett, 91 Mo. 377, referred to approvingly in Turner v. Gregory, supra. And if the Cruzen v. Stephens ruling can not be reconciled with Turner v. Gregory, the latter being the last expression of the Supreme Court on the subject, must be followed by us.

The foregoing rules are quoted mostly from decisions in tax cases to be found in our own reports, where the proceedings therein were *quasi in rem.* Corrigan v. Schmidt, ante. The divorce proceeding in question was where the court had

no jurisdiction over the defendant but it did have jurisdiction over the *status* of the parties and could therefore annul such status, that being a matter *quasi in rem.* Hamill v. Talbott, 81 Mo. App. 210. As a proceeding for divorce, where the defendant is a non-resident of the State and is notified by publication, is that *in rem* or *quasi in rem,* no reason is seen why the rules to which we have referred as applicable in tax cases are not equally applicable in a proceeding like the present.

In the light of these rules it is clear to us that "Emily" and "Emma" are not the same Christian names, nor are they *idem sonans,* for the attentive ear would find no difficulty in distinguishing the one from the other. It must therefore follow that notice to *Emma* Burge would not be notice to *Emily* Burge. The defendant in the divorce suit gave the minister of the gospel who solemnized the marriage with the decedent the name of Emily as the name by which she was christened, and the decedent therefore knew when he brought the suit for divorce her Christian name. There was no excuse for describing the defendant in that suit by any "pet name." We discover nothing in the evidence to justify the conclusion that she was known to the decedent by the name of "Emma," or that she was generally identified by any such appellation.

While it is not to be doubted that the description of the decedent in the order of publication by his initials instead of by his full Christian name of "Oscar," without more, would not be sufficient to authorize a judgment, yet, in view of the fact that he gave to the minister solemnizing his marriage with the defendant as his Christian name that of "O. G." instead of "Oscar F," and on other occasions described himself by the name of "O. G. Burge," it may be that within the meaning of the rule declared in some of the adjudged cases the description in the order as to him was sufficient. While it is perhaps true that Emma, Emily, Emeline, Emmiline, Emelee and Emilia are names that may as a general thing

be used interchangeably, yet, we can not think that where a person has been christened by one of these names that under the strict rule as to names, to which we have hereinbefore referred, in a proceeding for divorce, a notice by publication directed to a defendant described by any one of these Christian names would be good against a defendant if described by any one of the others;·for to so hold would be to abrogate the rule. However all this may be, we feel constrained to conclude that the notice given by the publication to *Emma Burge* was no notice to the defendant *Emily Burge,* and therefore the judgment was without notice and void.

But the plaintiff herein contends that even if the divorce judgment was void, that the plaintiff is estopped to deny its validity. No case has been found deciding that a court has jurisdiction to decree a divorce when there has been no notice to defendant either by the personal service of process or by publication. A judgment without such notice would be a nullity. Bishop on Mar. and Divorce, secs. 77, 142 and 552; Freeman on Judgments, sec. 580. As said by us in Hamill v. Talbot, ante: "It may be freely admitted that a divorce per se can not be established by estoppel." And in the same case it was further said, in substance, that while a void decree for divorce can not be validated by the acts of the parties thereto, except in so far as either is estopped by his or her own wrongful conduct in enjoying the fruits of such decree, as where a court had without jurisdiction granted alimony to the plaintiff wife and the defendant afterwards, with knowledge of the decree, had married again, and otherwise conducted himself as a single man, he could not be heard to dispute the validity of the decree as to alimony.

But in the decree in the divorce case proceedings under consideration here, no alimony or property rights were dealt with. There was no clause in the decree *in personam.* The defendant is claiming no property right under the decree. Hence, an estoppel, if allowed, could have no other effect than

to validate a void decree which went no further than to annul the marriage status. The restitution of the marriage status of the parties in such case is all the office the estoppel could perform, and that, as we have stated, it is not permitted to do. No property or property rights acquired under the decree is in issue here. The only and sole purpose of invoking the application of the doctrine of estoppel is to validate a void marriage; and this we do not think we can allow.

Even if the decree had been valid as against the defendant, there is not that privity which is an essential element of an estoppel in cases of this kind between the defendant and the decedent for the *ground of privity is property and not personal relation.* To make one a privy to an action, he must have acquired an interest in the subject-matter of that action either by inheritance, succession or purchase, or he must hold the property subordinately. Bigelow on Estoppel, 142. There is no pretense here that the defendant has acquired any interest in the subject-matter of the divorce proceeding in either of the ways just stated, nor could he: for the only matter determined in that action related solely to the marriage status. There is therefore no ground upon which to claim that the defendant was privy to the divorce proceedings, or in any way bound thereby in a controversy of this kind. Upon no principle deemed applicable to the case can we think the defendant estopped to impeach the divorce decree on the ground of the want of jurisdiction in the court giving it.

No error is seen in the action of the court in permitting witness Davidson to testify to the facts he did (Standard Oil Co. v. Drug Co., 84 Mo. App. 76), nor in allowing the defendant to adduce parol evidence in impeachment of the divorce decree, and especially so since the plaintiff adduced similar evidence to sustain it.

The judgment will accordingly be affirmed. All concur.