## GEPFORD et al. v. BURGE.

(District Court, D. Colorado. May 16, 1925.)

No. 7775.

Vendor and purchaser ⬤➾130(6)—"Good and merchantable title" to realty conveyed held not shown.

Where title records showed conveyances by J. C. Miller, John F. Werner, and L. D. Sergeant at times when Joel C. Miller, John Werner, and Luman D. Sergeant, respectively, held record title, and there was no evidence as to identity of such persons, held, "good and merchantable title" was not shown; such title being one not subject to such reasonable doubt as would create just apprehension in mind of reasonably prudent person, one that persons of reasonable prudence, guided by competent legal advice, would be willing to take and pay the fair value of land for.

In Equity. Suit by Samuel F. Gepford and W. J. Moss against Pearl F. Burge. Decree for defendant.

Frank B. Goudy and Frank L. Ross, both of Denver, Colo., for plaintiffs.

T. E. Munson, of Sterling, Colo., for defendant.

SYMES, District Judge. This is an action brought by the plaintiffs to recover the balance of the purchase price due on a contract for the sale of certain real estate, consisting of 320 acres in Phillips county, Colo., or to recover the possession thereof. J. L. Magill and Frank Nelson, the predecessors in title of the plaintiffs, made the contract, dated March 5, 1920, by which they agreed to sell the land in controversy to the defendant, in consideration of certain payments to be made by the defendant. The said Magill and Nelson agreed to sell and convey by "a warranty deed and a good and merchantable title," for $27,200, $11,000 as a down payment, $10,200 on March 1, 1921, and $6,000 to be represented by a mortgage on the prem-

ises. The defendant went into possession and failed to make the payment due March 1, 1921, and the time of payment was extended to September 1, 1921.

On March 21, 1921, defendant paid $612 interest in full on the contract to that date. On September 1, 1921, by agreement among the parties, the time for final payment was extended from September 1, 1921, to September 1, 1922. Magill conveyed his interest to one Nelson and one Severns, subject to the contract of purchase outstanding.

On the 27th of March, 1922, defendant wrote to Nelson that he could not see his way clear to pay the balance of the $10,200 on the contract; that the land was not worth it, and, unless he could get enough discount for cash, he would have to let Nelson take the land on September 1, 1922. Again, on April 1, 1922, defendant wrote Nelson, advising him that he would rather lose the amount already paid than to put any more money in the land.

On August 22, 1922, defendant and Nelson and Gepford, who had now acquired the interest of Severns in the property, entered into an agreement in writing extending the time of payment of $7,200 to September 1, 1923. Thereupon the defendant paid $3,000 on principal and $1,200 on interest. On August 17, 1923, defendant wrote to Nelson, asking for further time to pay the final payment due on September 1, 1923, and again on February 7, 1924, defendant requested further time to pay the balance due.

On February 23, 1924, defendant wrote Nelson that, because he had failed to tender deed and abstract for a period of three years, defendant had become suspicious of the title, and that he had obtained an abstract himself, had it examined, and secured an attorney's opinion that the title was no good; that he had elected to rescind, and would return the land upon the payment to him of the $14,000 he had paid and interest, less the rents and profits of the land while he was in possession.

The plaintiff thereupon brought this action to require the defendant to accept a deed to the property, and to pay the balance due, or to deliver up possession of the property. The trial was to the court without a jury, and the plaintiff and defendant agreed that title is as shown by the abstracts put in evidence, but disagree as to the legal effect of the entries. Formal proof of original instruments was waived by the defendant, and the plaintiff admits that the alleged defects are correctly set forth by the abstracts of title. There is no question but that the defendant

breached his contract, and that the plaintiff is entitled to the relief sought for, were it not for the defects which it is claimed make the title tendered doubtful in its character, and "not good and merchantable."

Counsel for the defendant has pointed out at great length many technical flaws that appeared in the abstracts, but most of them are without merit, and the only ones that require consideration are as follows:

To the northwest quarter of section 15, township 7, range 45: At entry No. 7 of the abstract there appears a warranty deed from J. C. Miller; Joel C. Miller took title by patent. At entry No. 41 on the abstract, John Werner took title. At entry No. 42 John F. Werner conveyed.

To the southwest quarter of section 15, township 7, range 45, Luman D. Sergeant obtained title by patent. At entry No. 4 on the abstract L. D. Sergeant conveyed. At entry No. 24 on the abstract John Werner obtained title. At entry No. 25 John F. Werner conveyed.

The real issue, therefore, is whether the abstracts show "a good and merchantable title." A marketable title has been defined as being:

"A title not subject to such reasonable doubt as would create a just apprehension of its validity in the mind of a reasonable, prudent and intelligent person; one that persons of reasonable prudence and intelligence, guided by competent legal advice, would be willing to take and pay the fair value of the land for." Eggers v. Busch, 154 Ill. 604, 39 N. E. 619.

"The well-established rule that a vendee contracting for a good title is entitled to demand and receive a marketable title has been adopted by the courts to protect him from such defects only as would cause a prudent and cautious purchaser to entertain a just apprehension of future trouble. It was not adopted to arm and equip the vendee with a sword of defense, in the form of technical and unsubstantial objections, to aid him in escaping liability in the event of his desire to avoid the obligations imposed upon him by the contract into which he has voluntarily entered." Summy v. Ramsey, 53 Wash. 93, 101 P. 506.

Are the defects pointed out above merely capricious, frivolous, and astute niceties, or are they such as would induce a prudent man to hesitate in accepting a title affected by them? There was no evidence affecting the title introduced outside of the abstracts of record. I will consider first the deeds made by J. C. Miller and L. D. Sergeant. Do they convey property standing in the name of Joel C. Miller and Luman D. Sergeant?

Names are the only marks and indicia which human kind can understand each other by. In Skelton v. Sackett, 91 Mo. 377, 3 S. W. 874, there was an action in ejectment. In proving title it appeared there was a patent to Quinces R. Noland, and that a tax judgment had been entered against Q. R. Noland. The court held that this was not sufficient evidence that publication on which the deed rested had been notice to Quinces R. Noland. In Bennett v. Libhart, 27 Mich. 489, the plaintiffs sued on a judgment purporting to be in favor of H. F. Libhart. His true name was Henry V. Libhart. It was held that: "It will not be assumed as a legal presumption that, where the family name and initials are the same, there is identity of person; and therefore Henry V. Libhart is not entitled to recover in an action upon a judgment in favor of H. V. Libhart, without any proof of his identity with the plaintiff in such judgment."

Considering now the objection to the conveyance from John F. Werner, where it appears that the title stood in John Werner, can it be said without other proof that there is identity of the person? In Gibson v. Foster, 24 Colo. App. 434, 135 P. 121, the court considered a case where there was a decree quieting the title to land, based upon publication of the summons against A. L. Deleplane. Albert S. Deleplane had received a patent. The court held there was no presumption as to identity, and said, at page 436 (135 P. 121):

"The middle name or initial in a person's name has become quite material in modern times, especially as a distinguishing identification of the person. Many persons now have the same Christian or given name, and the same patronymic family or surname, and it is by the middle name or initial only, in many instances, that the person may be distinguished or identified in writing."

In Ambs v. Chicago, St. Paul, Minneapolis & Omaha Railroad Co., 44 Minn. 266, 46 N. W. 321, the court considered a case where William H. Brown held title. William B. Brown conveyed. The court held there was no presumption as to the identity of the persons, and said, at page 270 (46 N. W. 322):

"But while, under many circumstances, it has been held that a middle initial in the name of a person will not be deemed a material part of his name, it is a matter of common knowledge that very many, and perhaps at this day most, persons bear a double, or

more than one, Christian name, and that in the writing of the name one of these is very commonly indicated merely by its initial letter. The use of such initials, in addition to a full written Christian name, is the most common means by which, in all the affairs of life, persons bearing names otherwise the same are distinguished. In judicial proceedings involving and determining questions of title this should not be ignored. Taking this case as an illustration, the title of land shown or admitted to have been formerly in William H. Brown does not prima facie appear to have been transmitted to the plaintiffs by proof of a deed to them executed by William B. Brown, and upon that bare fact the title to real estate, the same being in issue, should not be finally adjudicated to be in a grantee from the latter-named person. * * * In view of the facility with which the title or the rights of any person appearing upon the public records may be apparently transferred and divested by a deed or other instrument executed by any person bearing the same name, the question of identity of person becomes one of the highest importance when title is in issue and to be adjudicated, and when, at least, any circumstance appears casting a reasonable doubt upon the identity of persons upon whose identity the title depends, we think that identity is not to be presumed merely from the identity of names."

It may be that J. C. Miller and Joel C. Miller, John Werner and John F. Werner, and L. D. Sergeant and Luman D. Sergeant are one and the same parties, but there is no evidence of that fact. I am therefore of the opinion that the title tendered is not free from reasonable doubt, and is not of the character called for by the contract. It necessarily follows that the purchaser cannot be compelled to perform the same.

A decree will therefore be entered for the defendant.